WILLIAM SPEAGLE, AND WIFE DERENE SPEAGLE, PLAINTIFFS V. CHRISTY LYNETTE HOLLAND SEITZ, DEFENDANT

No. COA99-1526

(Filed 29 December 2000)

**Child Custody and Support— custody—protected status of parent—error to utilize best interests standard in favor of third-party**

The trial court erred by utilizing the best interests of the child standard to grant custody to plaintiffs, the child's grandparents, instead of to defendant mother, because: (1) the interest of the parent prevails against the interest of third parties and precludes the application of a best interests standard in resolving custody disputes unless the parent has engaged in some conduct inconsistent with his or her protected status; and (2) even if defendant mother's conduct from the date of the child's birth to the date of defendant's arrest for murder was inconsistent with her protected status, defendant was acquitted of the murder and there are no findings of fact or any evidence in the record that this conduct had any negative impact on the child or had a substantial risk of causing some harm to her, or that the conduct was still present at the time of the termination hearing.

Appeal by plaintiffs and defendant from order and judgment filed 5 April 1999 by Judge William A. Creech in Catawba County District Court. Heard in the Court of Appeals 17 October 2000.

*Sigmon, Clark, Mackie, Hutton & Hanvey, P.A., by Forrest A. Ferrell and Stephen L. Palmer, for plaintiff-appellants/appellees.*

*Rudolf Maher Widenhouse & Fialko, by Thomas K. Maher and M. Gordon Widenhouse, for defendant-appellant/appellee.*

GREENE, Judge.

Christy Lynette Holland Seitz (Defendant) appeals a 5 April 1999 Order and Judgment (the Order) awarding William Speagle and Derene Speagle (collectively, Plaintiffs) custody of Defendant's daughter, Amber Ashton Holland (Amber), with liberal visitation to Defendant. Plaintiffs cross-appeal the Order's denial of Plaintiffs' claim Defendant be ordered to pay child support for Amber.

In summary form, the undisputed evidence shows Amber was born out of wedlock on 3 September 1993. Defendant is the mother of the child and William Stacy Speagle (the father), now deceased, was the biological father of the child. Plaintiffs are the biological parents of the father and, thus, the paternal grandparents of Amber. Defendant had sole custody of Amber from birth until 24 October 1995, when a court order was entered granting joint custody to Defendant and the father. During the time the father had custody of Amber, the father and child resided in Plaintiffs' home. On 29 January 1996, the father was killed by Bryce Colby Delon, a recent companion of Defendant. On 30 January 1996, Defendant was arrested and charged with first-degree murder and conspiracy to commit first-degree murder of the father. On that same day, Plaintiffs filed an action seeking custody of Amber, and an Emergency Order was immediately entered granting Amber's custody to Plaintiffs. Defendant remained in jail until 26 March 1996, after which she was released on bond, moved to Dallas, Texas, and became employed as an office receptionist. On 29 March 1996, Defendant filed an answer to Plaintiffs' complaint and counterclaimed for Amber's custody. On 29 June 1997, Defendant was acquitted of all criminal charges arising from the father's death. On 19 August 1997, the trial court entered a temporary order maintaining Amber's custody with Plaintiffs and granting Defendant certain visitation privileges. With few exceptions, Defendant exercised her visitation privileges consistent with the 19 August 1997 order. Defendant was married to Robert Eric Seitz of Texas on 4 October 1997 and gave birth to his son on 15 June 1998. Defendant and her husband presently live in Texas.

The evidence further shows Plaintiffs are of good character and reputation and have a stable home in Hickory, North Carolina. Amber is well adjusted and is currently enrolled in the Catawba County schools. There is a strong bond between Amber and Plaintiffs. Defendant, between Amber's birth and her arrest in 1996, was regularly employed as a topless dancer at various clubs and, on occasion, had sexual relations with different men. There is no evidence

Defendant ever engaged in topless dancing or sexual relations in the presence of Amber.

The trial court entered findings of fact consistent with this undisputed evidence and further found in part:

> 58. . . . Defendant's lifestyle and romantic involvement[]s resulted in her neglect and separation from the minor child.

> 59. . . . [T]hat any actions in the past but not recent past by . . . Defendant that may have been construed as inconsistent with the presumption that the biological parent will act always in the best interests of the child do not render . . . Defendant unfit to have a relationship with, but not custody of, her daughter.

The trial court then concluded, in part: "that at this time the best interests of the child would be served [by] granting custody to . . . Plaintiffs" and "Defendant is unfit to have custody of, but is a fit and proper person to be granted visitation with, the minor child."

---

The dispositive issue is whether the findings of fact and conclusions of law in this case justify the trial court's application of the best interests standard to adjudicate the custody dispute between a natural parent and the grandparents.

In any child custody dispute between the parents and third parties, including grandparents, the parents have a constitutionally protected interest in the companionship, custody, care, and control of their children. *Price v. Howard*, 346 N.C. 68, 73, 484 S.E.2d 528, 530 (1997). The interest of the parents, therefore, prevails against the interest of third parties and precludes the application of a best interests standard, in resolving child custody disputes, unless the parents have engaged in some "conduct inconsistent with [their] protected status." *Id.* at 79, 484 S.E.2d at 534. This conduct includes, but is not limited to: neglect of the children; abandonment of the children; and, in some circumstances, the voluntary surrender of custody of the children. *Id.* Whether the conduct constitutes "conduct inconsistent" with the parents' protected status presents a question of law and, thus, is reviewable *de novo, Raynor v. Odom*, 124 N.C. App. 724, 731, 478 S.E.2d 655, 659 (1996); *see In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (any determination requiring the "exercise of judgment" is most properly classified a conclusion of law), and "need not rise" to that conduct necessary to terminate parental rights, *Price*, 346 N.C. at 79, 484 S.E.2d at 534. The parental conduct must,

however, in order to give rise to a best interests inquiry, have some negative impact on the child or constitute a substantial risk of such impact. *See Wisconsin v. Yoder,* 406 U.S. 205, 233-34, 32 L. Ed. 2d 15, 35 (1972) (parents' constitutional right to rear their children can be suspended only when "it appears that parental decisions will jeopardize the health or safety of the child"); *cf. Browning v. Helff,* 136 N.C. App. 420, 424, 524 S.E.2d 95, 98 (2000) (modification of child custody order permissible only upon showing of a change in circumstances "affecting the welfare of the child"); *In re Safriet,* 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (neglect of child, within meaning of Juvenile Code, occurs only upon showing of lack of proper care accompanied with a showing that the lack of care resulted in "some physical, mental, or emotional impairment of the juvenile"); *In re McCraw Children,* 3 N.C. App. 390, 395, 165 S.E.2d 1, 5 (1969) (adulterous conduct of parent does not per se render that parent unfit to have custody).

In this case, the trial court clearly utilized a best interests inquiry. It concluded it was in the "best interests of the child" to grant custody to Plaintiffs, the child's grandparents. This was error. Even assuming Defendant's conduct between 3 September 1993 (Amber's birth) and 30 January 1996 (Defendant's arrest) is "inconsistent" with her protected status,[1] there are no findings of fact or any evidence in the record this conduct had any negative impact on Amber or had a substantial risk of causing some harm to her. Accordingly, it was improper for the trial court to utilize the best interests standard to resolve this custody dispute, as Defendant has not lost her constitutionally protected right to retain custody of her child. The Order of the trial court must, therefore, be reversed. It, consequently, is unnec-

---

1. Although the "conduct inconsistent" with the parents' protected constitutional right is not to be judged solely by the termination statutes, *Price,* 346 N.C. at 79, 484 S.E.2d at 534, the law with regard to termination of parental rights can, nonetheless, be instructive. That law holds that termination of parental rights cannot be based on past circumstances, which no longer exist, but must be based on grounds present at the time of the termination hearing. *In re Young,* 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997). In this case, even assuming Defendant's topless dancing or sexual relations constitute "conduct inconsistent" with her protected parental status, within the meaning of *Price,* there is no evidence this conduct extended beyond 26 March 1996. Thus, there is no evidence Defendant was engaging in any "conduct inconsistent" with her protected status in August 1998, the date of the custody trial, or at any time soon before that trial. Furthermore, although Defendant was forced to leave her child when she was arrested and placed in custody, there is no evidence Defendant intended for this separation to be permanent and indeed Defendant sought to regain custody upon her release from jail. *See Price,* 346 N.C. at 83, 484 S.E.2d at 537 (parents' grant of temporary custody to another does not necessarily result in loss of protected status).

essary for us to address Plaintiffs' appeal or any other assignments of error.

Reversed.

Judges MARTIN and EDMUNDS concur.