WILLIAM SPEAGLE, AND WIFE, DERENE SPEAGLE v.
CHRISTY LYNETTE HOLLAND SEITZ

No. 32PA01

(Filed 18 December 2001)

**1. Child Support, Custody, and Visitation— custody—past circumstances or conduct—relevancy**

Any past circumstance or conduct which could impact either the present or the future of a child is relevant when determining custody between parents or between parents and nonparents, notwithstanding the fact that such circumstances or conduct did not exist or was not being engaged in at the time of the custody proceeding. However, findings of fact of a parent's conduct inconsistent with that parent's protected status, whether related to past or present conduct, do not in and of themselves determine custody but merely trigger the best interests of the child analysis.

**2. Child Support, Custody, and Visitation— custody—grandparents—conduct inconsistent with protected status as a parent—evidence of participation in murder of other parent—best interests of child standard**

Although the trial court reached the correct result in a child custody case when it applied the best interests of the child standard and awarded custody to plaintiff paternal grandparents based on its finding that defendant mother's neglect and separation from her child was inconsistent with her protected status, the trial court erred by excluding evidence of defendant's participation in the murder of the child's father, even though defendant had been acquitted of all criminal charges relating to the murder, because evidence of defendant's involvement in the murder of the child's father was highly relevant to whether she should be allowed any form of child custody and could be proven using the preponderance of the evidence standard applicable to child custody cases.

Justice EDMUNDS did not participate in the consideration or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 141 N.C. App. 534, 541 S.E.2d 188 (2000), reversing an order and judgment entered 5 April 1999 by

Creech, J., in District Court, Catawba County. Heard in the Supreme Court 11 September 2001.

*Sigmon, Clark, Mackie, Hutton, Hanvey & Ferrell, P.A., by Forrest A. Ferrell and Stephen L. Palmer; and Long, Parker, Warren & Jones, P.A., by Robert B. Long, Jr., for plaintiff-appellants.*

*Ruldolf Maher Widenhouse & Fialko, by Thomas K. Maher, for defendant-appellee.*

LAKE, Chief Justice.

The question presented for review in this case is whether the trial court was correct in determining defendant lost her constitutionally protected status as a parent and in applying the "best interests of the child" analysis under the circumstances in this case. The Court of Appeals reversed the trial court, holding there was no evidence of "conduct inconsistent" with defendant's protected status at the time of trial or at any time soon before trial, which would support triggering of the "best interest" analysis. *Speagle v. Seitz*, 141 N.C. App. 534, 537 n.1, 541 S.E.2d 188, 190 n.1 (2000).

On 1 March 2001, this Court allowed defendant's motion to dismiss plaintiffs' appeal of a constitutional question, but allowed plaintiffs' petition for discretionary review. For the reasons stated below, we reverse the decision of the Court of Appeals and direct that court to reinstate the trial court's judgment awarding custody of the child to plaintiffs.

On 3 September 1993, defendant, Christy Lynette Holland (now Christy Seitz), gave birth to a daughter, Amber Ashton Holland, out of wedlock. The biological father of the child was William Stacy Speagle. Starting soon after the child's birth, defendant and the child often moved from one location to another. Defendant and the minor child resided with plaintiffs, William Speagle and Derene Speagle, and the father from about 1 October 1993 until shortly after Christmas in December 1993. Plaintiffs are the parents of Stacy Speagle and the paternal grandparents of the child.

Defendant was employed as a topless dancer at various establishments in North Carolina from 1993 through 1995. Defendant was fired from one such establishment in June 1995 in Hickory, North Carolina, for violating its rules by ejaculating a male patron in front of the audience.

During the early part of 1994, defendant and the infant child resided with defendant's mother and stepfather. During this period, defendant denied that Stacy Speagle was the biological father of the child. However, a paternity test confirmed he was the biological father. Defendant and her daughter moved to a townhouse in the Bethlehem community of Alexander County, North Carolina, in January or February 1994. Plaintiffs and the child's father visited the child at this location. Defendant and the child moved to Raleigh in October 1994. In March 1995, they moved back to Hickory, North Carolina. After her return to Hickory in 1995, defendant danced at another establishment in Hickory at various times throughout the year. While defendant worked, she left her child in the care of a woman previously warned by the Catawba County Department of Social Services for keeping too many children in her house. Defendant occasionally picked the child up at 1:00 or 2:00 a.m. from this residence.

Defendant and the father reconciled several times after the child's birth. After a period of reconciliation in the summer of 1995, they soon separated again. Defendant did not allow the father to see his child after this separation. The father filed two separate actions in Catawba County, seeking custody and legitimation of the minor child. On 12 December 1995, the trial court entered a temporary custody order providing joint custody to defendant and the father. The custody case was set for trial commencing at the 21 February 1996 session of court.

In September 1995, defendant moved to Carolina Beach, North Carolina, with the child in her custody. From September 1995 until November 1995, defendant worked part-time as a topless dancer in Snead's Ferry, North Carolina. During this period, she had a relationship with Bryce Delon, a marine stationed nearby at Camp Lejeune. On weekends, defendant and her sister, Brandy Holland, would spend the night on the base with Delon and his roommate, Heath Mosely. On occasion, defendant engaged in sexual intercourse with Delon, and her sister engaged in sexual intercourse with Mosely during these weekends.

Defendant had sole custody of the child from the time of her birth until 12 December 1995, when the trial court entered an order granting joint custody to defendant and the father. During the times defendant and the father were not reconciled and he had custody of the minor child, both father and child resided with plaintiffs.

In December 1995, defendant traveled with Delon to Texas to meet his family. On 18 January 1996, defendant and Stacy Speagle again reconciled and began living together in defendant's home in Hickory. After this reconciliation, Delon visited defendant at her residence in Hickory.

On 29 January 1996, Delon shot and killed Stacy Speagle. Later that evening, Delon committed suicide. On 30 January 1996, defendant was arrested and charged with the first-degree murder of Speagle and conspiracy to commit first-degree murder. On the day of defendant's arrest, plaintiffs filed a complaint seeking permanent custody of the child as well as an *ex parte* order for temporary custody. The District Court, Catawba County, immediately entered an emergency order granting plaintiffs custody of the child. Defendant remained in jail until 26 March 1996, when she was released on bond. After being released on bond, defendant moved to Dallas, Texas, and lived with her sister, Brandy Holland. She later established her own residence there and worked as an office receptionist.

On 29 March 1996, defendant filed an answer to plaintiffs' complaint and counterclaimed for custody. On 2 May 1996, the trial court denied defendant's motion for temporary custody. The court allowed plaintiffs' motion to stay further proceedings either until the completion of defendant's trial for Speagle's murder or the district attorney, the State Bureau of Investigation and the Hickory Police Department "decid[e] to share all information which plaintiffs' counsel considers adequate to present the case of the plaintiffs at a custody proceeding." On 29 June 1997, after a six-week trial, defendant was acquitted of all charges relating to the murder of Speagle. In October 1997, defendant married Eric Seitz in Texas, and in June 1998, she gave birth to a second child.

In the case *sub judice*, the trial court found as a fact that defendant's "lifestyle and romantic involvements" resulted in her "neglect and separation from the minor child" and concluded that defendant was unfit to have custody of the child. The trial court found as a fact and concluded as a matter of law that, at the time of the hearing, it was in the best interests of the child for custody to remain with plaintiffs. Defendant was awarded visitation with the child.

The trial court further found defendant's conduct to be inconsistent with her constitutionally protected interest as set forth in *Petersen v. Rogers*, 337 N.C. 397, 445 S.E.2d 901 (1994). In *Petersen*,

## SPEAGLE v. SEITZ

[354 N.C. 525 (2001)]

this Court held that natural parents have a constitutionally protected interest in the companionship, custody, care, and control of their children. Absent a showing of unfitness or neglect, this interest must prevail in a custody dispute between a parent and a nonparent. *Id.* at 403-04, 445 S.E.2d at 905.

In addition, the trial court made several findings of fact regarding plaintiffs and their relationship with the minor child. The trial court found plaintiffs presented ample testimony of their love for the child and their ability to provide for her care and upbringing. Plaintiffs had good character and reputations, with a stable life in a comfortable, well-kept home in Hickory, North Carolina. The child was well adjusted; was enrolled in a nearby school; and had a strong bond with plaintiff, Derene Speagle. Shortly after the child began visitation with defendant, plaintiffs sought professional assistance from a child psychologist to assist the child with those visits. The trial court found that since the child's birth, plaintiffs and the child had a close and loving relationship, the continuation of which was necessary to protect the child's best interests and welfare.

Defendant appealed the trial court's decision to the Court of Appeals, contending there was insufficient evidence to support the trial court's finding that defendant lost her constitutionally protected right to custody. The Court of Appeals agreed, and based on *Petersen*, it reversed the trial court's ruling and awarded custody of the child to defendant. *Speagle*, 141 N.C. App. at 537-38, 541 S.E.2d at 190. The Court of Appeals held there existed "no evidence [d]efendant was engaging in any 'conduct inconsistent' with her protected status in August 1998, the date of the custody trial, or any time soon before that trial." *Id.* at 537 n.1, 541 S.E.2d at 190 n.1. The Court of Appeals thus concluded that defendant did not lose her constitutionally protected status. *Id.* at 537, 541 S.E.2d at 190. Therefore, the court reasoned that it was improper for the trial court to apply the best interests analysis. *Id.*

In the appeal to the Court of Appeals, plaintiffs asserted a cross-assignment of error addressing the trial court's failure to admit and consider evidence of defendant's participation in the murder. This cross-assignment was not addressed by the Court of Appeals. In their petition for discretionary review by this Court, plaintiffs included this issue that the Court of Appeals failed to address. On 1 March 2001, this Court allowed plaintiffs' petition for discretionary review with no limitations.

**SPEAGLE v. SEITZ**

[354 N.C. 525 (2001)]

Plaintiffs now argue that the trial court's findings of fact of defendant's neglect and separation from the child and that defendant's conduct was inconsistent with her protected status were supported by the evidence, and the trial court's conclusions of law based thereon were correct. Additionally, plaintiffs assert that while the trial court reached the correct result, the court erred in excluding evidence of defendant's participation in Speagle's murder. Plaintiffs contend that in light of defendant's overall conduct and under these circumstances, the Court of Appeals erred in concluding defendant did not lose her constitutionally protected status. Specifically, plaintiffs assert that the evidence of defendant's involvement in Speagle's murder was relevant and should have been allowed and incorporated into the trial court's determination. Plaintiffs contend defendant's participation in the murder of the child's father could be proven by a preponderance of the evidence, and such proof, in and of itself, would abrogate her constitutional right to custody. Plaintiffs contend the murder evidence and trial court's findings of fact regarding defendant's conduct inconsistent with her protected status, based upon her lifestyle, strongly support the trial court's award of custody to plaintiffs.

The United States Supreme Court has recognized that protection of a parent's interest in the custody of his or her children is not absolute. *Lehr v. Robertson*, 463 U.S. 248, 77 L. Ed. 2d 614 (1983). This principle is stated by this Court in *Price v. Howard*, 346 N.C. 68, 76, 484 S.E.2d 528, 533 (1997). Like the present case, *Price* also involved a custody dispute between a parent and a third party who was not the natural parent. In *Price*, this Court set forth a test for determining when a parent loses his or her protected status and the "best interest of the child" analysis is triggered, holding as follows:

> A natural parent's constitutionally protected paramount interest in the companionship, custody, care, and control of his or her child is a counterpart of the parental responsibilities the parent has assumed and is based on a presumption that he or she will act in the best interest of the child. *Lehr*, 463 U.S. 248, 77 L. Ed. 2d 614; *In re Hughes*, 254 N.C. 434, 119 S.E.2d 189 [(1961)]. Therefore, the parent may no longer enjoy a paramount status if his or her conduct is inconsistent with this presumption or if he or she fails to shoulder the responsibilities that are attendant to rearing a child. If a natural parent's conduct has not been inconsistent with his or her constitutionally protected status, applica-

tion of the "best interest of the child" standard in a custody dispute with a nonparent would offend the Due Process Clause. However, conduct inconsistent with the parent's protected status, which need not rise to the statutory level warranting termination of parental rights, see N.C.G.S. § 7A-289.32 (1995), would result in application of the "best interest of the child" test without offending the Due Process Clause. Unfitness, neglect, and abandonment clearly constitute conduct inconsistent with the protected status parents may enjoy. *Other types of conduct*, which must be viewed on a case-by-case basis, can also rise to this level so as to be inconsistent with the protected status of natural parents. Where such conduct is properly found by the trier of fact, based on evidence in the record, custody should be determined by the "best interest of the child" test mandated by statute.

*Price*, 346 N.C. at 79, 484 S.E.2d at 534-35 (emphasis added) (citations omitted); *see also Adams v. Tessener*, 354 N.C. 57, 61-62, 500 S.E.2d 499, 502 (2001). We reaffirm the holding in *Price*.

As mentioned above, plaintiffs contend the trial court erred in excluding relevant evidence of defendant's participation in the murder. Notwithstanding plaintiffs' assignments of error and arguments in this regard, the Court of Appeals did not specifically address the relevancy of the murder evidence.

While we do not consider the evidence relating to the murder to be essential to our determination of the instant case, in light of the circumstances here presented, we elect to address the issue of the relevancy of this type of evidence in custody proceedings, as this was one of the main contentions of the parties in both the trial court and the Court of Appeals, and we consider this issue important in the development of our law in custody proceedings.

[1] In addition, we do not agree with the inference contained in the Court of Appeals' opinion that custody proceedings, unlike termination of parental rights proceedings, cannot or should not be concerned with past circumstances or past actions and conduct of a parent when determining custody as between parents or between parents and nonparents. We conclude that any past circumstance or conduct which could impact either the present or the future of a child is relevant, notwithstanding the fact that such circumstance or conduct did not exist or was not being engaged in at the time of the custody proceeding. In this regard, we note that findings of fact of a parent's conduct inconsistent with that parent's protected status, whether

related to past or present conduct, do not in and of themselves determine custody. A finding of inconsistent conduct merely triggers the best interests of the child analysis.

[2] We now turn to whether the evidence of defendant's participation in Speagle's murder was relevant and constituted "conduct inconsistent" with her protected status. While the trial court did not expressly state this evidence was not relevant, it is clear from the record that the trial court did not consider this evidence when determining custody. The court noted defendant had been tried and acquitted of all charges in the Speagle murder and stated that evidence of defendant's role in the murder had "nothing to do with what is before this Court today." We disagree with the trial court's ruling regarding the relevancy and thus the admissibility of this evidence.

We find the logic and authority set forth in a prominent case from California to be compelling. The court there held: "As a matter of case law, as well as common sense, the question of whether one parent has actually murdered the other is about as relevant as it is possible to imagine in any case involving whether the surviving parent should be allowed any form of child custody." *Simpson v. Brown*, 67 Cal. App. 4th 914, 925-26, 79 Cal. Rptr. 2d 389, 395 (1998). The relevance of this type of evidence in child custody cases is clear, and such evidence is paramount.

Other areas of North Carolina law find such evidence highly relevant. For example, the "slayer" statute, N.C.G.S. § 31A-4 (1999), prevents a murderer from acquiring the testate or intestate property of a decedent he willfully and unlawfully killed. Likewise, the principle that a person may not benefit from his or her own wrong prevents a parent from sharing in the wrongful death proceeds in an action brought by the child's estate, based upon the parent's negligence. *Carver v. Carver*, 310 N.C. 669, 675, 314 S.E.2d 739, 744 (1984); *see* 2 James B. McLaughlin, Jr. & Richard T. Bowser, *Wiggins: Wills and Administration of Estates in North Carolina* § 203 (4th ed. 2000). It would be incongruous for evidence of a party's participation in a murder to be relevant in property and estate cases but not be relevant in child custody cases where one parent is accused of killing the other parent.

The trial court excluded testimony previously given by Robert Varney in defendant's criminal trial. That testimony tended to show that in December 1995, Bryce Delon approached Varney and asked him to kill Speagle while Delon was on military leave. Delon appar-

ently wanted to kill Speagle because of his custody battle with defendant. Varney also testified in the murder trial that on 27 January 1996, two days prior to the murder, he traveled with Delon to Hickory to visit defendant at the home she was sharing with Stacy Speagle. During the evening of 27 January 1996, a woman named Heather Brown came to defendant's residence. According to Varney's testimony, Delon hid in the bathroom with a .45-caliber pistol in hand until he realized it was Brown. Delon then stated to Brown, "You almost got f——ing shot." Varney testified this incident occurred while the child was in the residence. During the trip, Delon told Varney that "he [Delon] was going to have Christy [defendant] send him [Stacy Speagle] to a Food Lion and he was going to pop him in the parking lot." Speagle was in fact murdered by Delon in a Food Lion parking lot. Delon murdered Speagle with a .45-caliber pistol. All of this evidence was excluded in the custody trial.

The trial court did consider testimony by Brown regarding a statement made by defendant concerning the victim. Brown testified that in December 1995, defendant stated to Brown that "Stacy Speagle would be dead by Christmas and it was taken care of." Speagle was murdered by Delon on 29 January 1996, one month after Christmas.

The California Court of Appeals dealt with a similar situation in *Hightower v. Smith*, 147 Cal. App. 2d 686, 306 P.2d 86 (1956). In that case, the mother's paramour was convicted of murdering the child's father. At the time of the murder, the child's father was married to the child's mother. The mother was indicted, tried and acquitted of the father's murder. The mother sought custody of her child over the child's paternal aunt. The trial court considered all evidence and denied custody to the mother. *Id.* at 687, 306 P.2d at 86. The California Court of Appeals affirmed the trial court. *Id.* at 703, 306 P.2d at 98.

In this case, defendant was acquitted of all criminal charges relating to the murder. The standard of proof in a criminal trial is proof of guilt beyond a reasonable doubt. However, the applicable standard of proof in child custody cases is by a preponderance, or greater weight, of the evidence. *Jones v. All American Life Ins. Co.*, 312 N.C. 725, 733, 325 S.E.2d 237, 241 (1985). Preponderance of the evidence is a lower standard than proof beyond a reasonable doubt. Although defendant was acquitted in the criminal trial, evidence of her involvement in the murder of the child's father was highly relevant in the subsequent custody case and could possibly have been proven using the lower standard. Thus, the trial court should have considered all

relevant, admissible evidence relating to defendant's role in Speagle's murder.

Defendant argued Varney's testimony was inadmissible hearsay, regardless of relevancy. Plaintiffs contended the evidence fell within the Rule 804(b)(1) hearsay exception as former testimony admissible where the declarant at a later trial is unavailable as a witness. The trial court did not find this evidence inadmissable as hearsay, and the Court of Appeals did not address the issue. We decline to address this issue as well because we conclude a new trial is not required in this case.

In light of the evidence before and considered by the trial court, we conclude the trial court was correct in its finding of fact that defendant's conduct "resulted in her neglect and separation from the minor child," and in accord with our holding in *Price*, we further conclude the trial court was correct in holding, in effect, that defendant's actions were inconsistent with her protected status, and in applying the "best interest of the child" analysis, that defendant was unfit to have custody. The decision of the Court of Appeals is therefore reversed and that court is directed to reinstate the order and judgment of the trial court.

REVERSED.

Justice EDMUNDS did not participate in the consideration or decision of this case.