McROY v. HODGES

[160 N.C. App. 381 (2003)]

PAUL McROY AND PATTY SUE McROY, PLAINTIFFS V.
MARION EUGENE HODGES, JR., DEFENDANT

No. COA02-1399

(Filed 16 September 2003)

## 1. Appeal and Error— appealability—interlocutory order— child custody

Although the trial court's child custody order places temporary custody of the minor child with plaintiff maternal grandparents, it is a final order and is not interlocutory because it places permanent custody of the minor child with defendant father and sets forth no reconvening date.

## 2. Child Support, Custody, and Visitation— custody—grandparents—best interests of child

The trial court erred in a child custody case by granting permanent custody of the minor child to defendant father instead of to plaintiff maternal grandparents, because: (1) all of the evidence tended to show that defendant had little or no contact with and demonstrated no interest in the minor child until the death of the child's mother, which occurred little more than a month before the custody hearing; (2) the trial court found that defendant had engaged in conduct inconsistent with his constitutionally protected status as a parent and that the best interests of the child standard applied; (3) the trial court's finding that it was in the minor child's best interests for permanent custody to be placed with defendant was premature, speculative, and unsupported by the evidence when the minor child had no relationship with defendant; and (4) plaintiffs assisted in the care and nurturing of the minor child since his birth, and the minor child resided with plaintiffs on several occasions both with and without his mother.

Appeal by plaintiffs from order entered 2 July 2002 by Judge Samuel G. Grimes in Beaufort County District Court. Heard in the Court of Appeals 20 August 2003.

*Darrell B. Cayton, Jr. for plaintiff appellants.*

*W. Michael Spivey for defendant appellee.*

TIMMONS-GOODSON, Judge.

Paul and Patty Sue McRoy ("plaintiffs") appeal from an order of the trial court granting temporary custody of Brandon Paul Hodges ("Brandon") to plaintiffs, and granting permanent custody to Marion Eugene Hodges, Jr. ("defendant"). For the reasons stated herein, we reverse the order of the trial court.

The pertinent facts of the instant appeal are as follows: Plaintiffs are the maternal grandparents of Brandon, who was born 30 May 1994. Brandon's mother, Robin Hodges ("Hodges"), died on or about 8 February 2002. From his birth until the time of his mother's death, Brandon resided with his mother. Brandon also occasionally resided with plaintiffs. Defendant, Brandon's natural father, had extremely limited contact with Brandon prior to Hodges' death. After Hodges died, defendant expressed interest in visiting with and eventually establishing custody of Brandon. On 13 February 2002, plaintiffs filed a complaint requesting temporary and permanent custody of Brandon in Beaufort County District Court. The matter came before the trial court on 2 July 2002, at which time the trial court made the following pertinent findings of fact:

10. Plaintiff Paul McRoy is currently employed as a painter. Plaintiff Patty Sue McRoy, 52 years old, is currently a homemaker. They have been married for 22 years.

11. Defendant is currently employed with Highway Mobile Home Movers and earns approximately $23,000 per year. Defendant's wife, Debra Hodges, is presently disabled from an automobile accident, and is not working outside the home. Defendant and his wife have been married approximately one year. Defendant has another son, Ridge Allen Hodges, 9, who lives with his mother, Lisa Shepard Martin, in Washington, North Carolina. Defendant visits with this child, although not on any set schedule.

12. Defendant testified he and Robin Hodges were never married, but lived together for approximately six months in 1993. When the minor child, Brandon Paul Hodges, was born on May 30, 1994, defendant and Robin Hodges were not living together. At that time, both defendant and Robin Hodges were living unstable lives, and both experienced problems with alcohol and drugs. The minor child was born prematurely, but the defendant did not visit the child in the hospital. Defendant first saw the child when he was approximately 5-6 months old. Defendant testified he

attempted to visit or make contact with the child during infancy, but there was animosity between defendant, Robin Hodges, and the plaintiffs, and therefore, no visits occurred.

13. Defendant admitted that since Brandon Paul Hodges was an infant until February, 2002, he had little or no contact with said child. During this time, defendant never sent any Christmas or birthday cards/presents, visited the child at school or sporting events, or otherwise made any real efforts to visit with the minor child. Also during this time, defendant consulted with a lawyer regarding the custody/visitation of said child, but was unable to afford the fees to hire a lawyer. During this time, defendant's sister, Lynn Hodges, loaned defendant money, and accumulated more than $3000.00 in educational savings for Ridge Allen Hodges, defendant's other son. However, defendant never sought to borrow money from his sister or other family member during this time in order to hire an attorney. Since the death of Robin Hodges, defendant desires to accept responsibility for the said minor child, and wants custody of same.

14. In 1996, defendant checked himself into Tideland Mental Health Center for drug and alcohol abuse. He completed a 28 day rehabilitation program, and then was transferred to a halfway house for six months in Rocky Mount. Defendant has been alcohol/drug free since that time. Defendant moved away from Beaufort County in an effort to clean himself up.

15. Defendant further testified that in 1996, after completing rehabilitation, he resided in Rocky Mount, North Carolina. Robin Hodges traveled to Rocky Mount with the said minor child to visit defendant. At that time, Robin Hodges asked defendant to reconcile with her, and when the defendant refused, Robin Hodges told defendant he would never see the said minor child again.

16. Defendant had opportunities to be in the presence of Brandon Paul Hodges while defendant was attending soccer/baseball games of his other son, Ridge. However, during these times, defendant failed to introduce himself or otherwise make contact with Brandon prior to February, 2002.

17. From February 28, 2002 until the date of this hearing, defendant has exercised visitation, by consent and pursuant to a graduated schedule, with the minor child. These visitations occurred in

Beaufort County, at which time defendant attended some baseball practices, took the child to a playground/movie, or spent time with the child at the home of Pat Hodges, defendant's mother. As of this hearing, the minor child had not spent any overnights with the defendant.

18. Defendant has consistently paid child support for the benefit of Brandon Paul Hodges, except for periods when he was out of work/between jobs. On several occasions, defendant's tax refunds have been intercepted for child support purposes.

19. Plaintiffs, particularly Patty Sue McRoy, assisted Robin Hodges in the care and nurturing of the said minor child since his birth. On several occasions Robin Hodges and the minor child lived with the plaintiffs. In addition, the minor child lived with the plaintiffs during the times that Robin Hodges was admitted to some type of inpatient treatment center or hospital for substance abuse or manic depression. Even when Robin Hodges and the minor child were not living with plaintiffs, Patty Sue McRoy saw Robin and the child almost daily.

. . . .

21. Since February 8, 2002, plaintiffs arranged for the minor child to meet with a counselor at Tideland Mental Health Center concerning the death of the child's mother. As of this hearing, the child had met with a counselor on approximately two occasions.

22. Elizabeth Beacham testified that as manager of Glenview Apartments from approximately 1995-1999, she had occasion to see Robin Hodges, Patty Sue McRoy and the minor child frequently. When the child was only a few years old, she heard defendant state he was the father of said child but wanted nothing to do with him. . . .

23. Lisa Shepard Martin is the mother of Ridge Allen Hodges, the other son by defendant. Defendant has paid child support to her for the benefit of said child, and has visited sporadically with the said child, although not pursuant to any set schedule. Ms. Martin had no reason to doubt the defendant's fitness as a parent. Ridge Allen Hodges has visited defendant in [defendant's town of residence].

24. Plaintiff Patty Sue McRoy testified she felt it was in the child's best interests that he live primarily with the plaintiffs, giv-

ing due consideration to the wishes of the child. Said plaintiff said the minor child was like her own. Defendant testified he felt the child's best interests would be served by completing the school year while living with plaintiffs so the child would not have to change schools. Defendant further testified he desired to have custody of the said child by the start of the next school year in August, 2002, after a graduated visitation schedule was put in effect.

25. Defendant currently interacts well with his neighbors, including children. Both plaintiffs and defendant are fit and proper persons to exercise the care, custody and control of the minor child, Brandon Paul Hodges.

26. Prior to February 8, 2002 (death of Robin Hodges), defendant acted in a manner inconsistent with his constitutionally protected custody right pursuant to Price v. Howard, 346 N.C. 68, 484 S.E.2d 528 (1997) and Penland v. Harris, 135 N.C. App. 359, 520 S.E.2nd [sic] 105 (1999). Therefore, plaintiffs/grandparents are entitled to maintain an action for custody pursuant to N.C.G.S. 50-13.1(a).

27. Robin Hodges, the mother of the minor child, did not allow the defendant to establish a relationship with the said minor child, although the defendant acquiesced in Robin Hodges' conduct.

28. Plaintiffs have resided in Beaufort County during the said minor child's entire life, as has defendant's mother and sister, all of which defendant has been aware.

29. In chambers in the presence of counsel, Brandon Paul Hodges, 7 years old, testified he and Ridge Allen Hodges are good friends. He further stated he wished to live with the plaintiffs. The Court, in light of the child's age, maturity and demeanor places very little weight on his testimony as it relates to his best interests.

30. Plaintiffs are fit and proper persons to exercise the care, custody and control of Brandon Paul Hodges, and it is currently in the best interests of the said minor child that his custody be placed temporarily with the plaintiffs through the 2002 summer. During this time, the defendant will continue to establish a relationship with the minor child through a gradually increased schedule of visitation. It is also in the child's best interests that

custody be transferred to the defendant once a relationship is established between the child and defendant. . . .

The trial court thereafter concluded that it was in Brandon's best interests to remain in plaintiffs' custody until August 2002, at which time defendant would be granted permanent custody. From the order granting permanent custody to defendant, plaintiffs appeal.

---

Plaintiffs argue that the trial court erred in granting permanent custody of Brandon to defendant. For the reasons stated hereafter, we agree with plaintiffs and therefore reverse the order of the trial court.

[1] We note initially that, contrary to the argument by defendant, the order of the trial court is a final order and is therefore not interlocutory. Although the order places temporary custody with plaintiffs, it places permanent custody of Brandon with defendant. It moreover establishes visitation rights and a visitation schedule for both parties. Even where an order grants only temporary custody, it is not interlocutory unless the trial court states a clear and specific reconvening time in the order, and the time interval between the two hearings is reasonably brief. *See Brewer v. Brewer*, 139 N.C. App. 222, 228, 533 S.E.2d 541, 546 (2000); *Cox v. Cox*, 133 N.C. App. 221, 233, 515 S.E.2d 61, 69 (1999). In the present case, the order of the trial court sets forth no reconvening date, and clearly places permanent custody with defendant. Because the order is a final one, it is not interlocutory and is properly before this Court.

[2] Section 50-13.2(a) of the North Carolina General Statutes provides that the court "shall award the custody of [a minor] child to such person, agency, organization or institution as will best promote the interest and welfare of the child." N.C. Gen. Stat. § 50-13.2 (2001). In custody matters, the best interests of the child is the polar star by which the court must be guided. *See In re DiMatteo*, 62 N.C. App. 571, 572, 303 S.E.2d 84, 85 (1983). Although the trial judge is granted wide discretion, a judgment awarding permanent custody must contain findings of fact in support of the required conclusion of law that custody has been awarded to the person who will best promote the interest and welfare of the child. *See Story v. Story*, 57 N.C. App. 509, 513-16, 291 S.E.2d 923, 926-27 (1982); *Montgomery v. Montgomery*, 32 N.C. App. 154, 231 S.E. 2d 26 (1977). "These findings may concern physical, mental, or financial fitness or any other factors brought out by the evidence and relevant to the issue of the welfare of the child."

*Steele v. Steele*, 36 N.C. App. 601, 604, 244 S.E. 2d 466, 468 (1978). "The welfare of the child is the paramount consideration to which all other factors, including common law preferential rights of the parents, must be deferred or subordinated . . . ." *Griffith v. Griffith*, 240 N.C. 271, 278, 81 S.E. 2d 918, 923 (1954). Where a parent engages in conduct inconsistent with his or her constitutionally protected status, such paramount status is lost, and application of the "best interest of the child" standard in a custody dispute with a nonparent does not offend constitutional considerations. *See Speagle v. Seitz*, 354 N.C. 525, 530-31, 557 S.E.2d 83, 86-87 (2001) (holding that the trial court properly awarded minor child to paternal grandparents rather than mother under the best interests standard).

In the instant case, neither the evidence presented nor the findings of the trial court support the trial court's conclusion that Brandon's interests would best be served by placing permanent custody with defendant. All of the evidence, as well as the trial court's findings, tended to show that defendant had little or no contact with and demonstrated no interest in the minor child until the death of the child's mother, which occurred little more than a month before the custody hearing. As such, the trial court determined that defendant had engaged in behavior inconsistent with his constitutionally protected status as a parent. At the time of the hearing, defendant had visited with Brandon, but had not spent more than one consecutive day with him. The trial court recognized that Brandon had no relationship with defendant, but nevertheless found that "once a relationship [was] established" it would be in Brandon's best interests to live with defendant. The trial court then set a time frame of approximately four months for transferral of custody, during which time defendant and Brandon presumably "would establish a relationship." The trial court had no evidence, however, and therefore made no findings, concerning the *quality* of the relationship that it assumed defendant and Brandon would enjoy after four months. As such, the trial court's finding that it was in Brandon's best interests for permanent custody to be placed with defendant is premature, speculative and unsupported by the evidence.

In contrast to defendant, the evidence showed that plaintiffs assisted "in the care and nurturing of the said minor child since his birth." Plaintiff Patty Sue McRoy interacted with Brandon on a daily basis. Over the course of his life, Brandon resided with plaintiffs on several occasions, both with and without his mother. Following the death of his mother, plaintiffs assumed all responsibility for Brandon,

including obtaining grief counseling for the child. There was substantial evidence presented by plaintiffs at the hearing regarding their devotion to Brandon, as well as their life-long financial support of him.

"When the court finds that both parties are fit and proper persons to have custody, as it did here, and then adjudges that it is in the best interest of the child for the father to have custody, such holding will be upheld. But it must be supported by competent evidence." *Green v. Green*, 54 N.C. App. 571, 574, 284 S.E.2d 171, 174 (1981). Our examination and consideration of the record leads us to the conclusion that the findings of fact set out above are not supported by competent evidence, and that the remaining findings of fact are not sufficient to support the conclusion that it was in the child's best interest that his custody be awarded to his father. *See id.* As such, this case must be remanded for a new hearing on the issue of permanent custody.

Reversed and remanded.

Judges HUNTER and ELMORE concur.