GEER, Judge.
Defendant Aundrea Rea Carroll appeals from the trial court's order granting primary custody of her son G.L. to plaintiff Betty Laird - Ms. Carroll's mother and the child's grandmother. Since Ms. Carroll has not properly assigned error to the trial court's findings of fact and since those findings support the trial court's conclusions of law, we hold that the trial court did not err in concluding that Ms. Carroll engaged in conduct inconsistent with her constitutionally protected status as a parent. Based on ourreview of the record and the trial court's order, we further hold that the court did not abuse its discretion in determining that the best interests of the child required that custody be awarded to Ms. Laird. Accordingly, we affirm the trial court's order.
Ordinarily, in child custody proceedings, N.C. Gen. Stat. § 50-13.2(a) (2003) requires that the trial court "award the custody of [a minor] child to such person, agency, organization or institution as will best promote the interest and welfare of the child." When, however, the proceeding involves a dispute between a parent and a nonparent, the parent has a constitutionally protected right to the custody, care, and control of his or her child. Petersen v. Rogers, 337 N.C. 397, 406, 445 S.E.2d 901, 906 (1994). This constitutionally protected interest "must prevail in a custody dispute with a nonparent, absent a showing of unfitness or neglect." Price v. Howard, 346 N.C. 68, 72, 484 S.E.2d 528, 530 (1997).
A parent's paramount constitutional interest in his or her child exists hand-in-hand with "the parental responsibilities the parent has assumed." Id. at 79, 484 S.E.2d at 534. Because of these responsibilities, courts presume that the parent will act in the best interest of the child. Id. Accordingly, the parent loses this paramount status "if his or her conduct is inconsistent withthis presumption or if he or she fails to shoulder the responsibilities that are attendant to rearing a child." Id. Our Supreme Court has described the conduct that is inconsistent with a parent's protected status: "Unfitness, neglect, and abandonment clearly constitute conduct inconsistent with the protected status parents may enjoy. Other types of conduct, which must be viewed on a case-by-case basis, can also rise to this level so as to be inconsistent with the protected status of natural parents." Id., 484 S.E.2d at 534-35. Once the trial court finds such conduct, "custody should be determined by the `best interest of the child' test mandated by statute." Id., 484 S.E.2d at 535.
The trial court's findings of fact as to whether a parent's conduct is inconsistent with his or her constitutionally protected status are conclusive on appeal if they are supported by clear and convincing evidence, even though the evidence might sustain findings to the contrary. Owenby v. Young, 357 N.C. 142, 147, 579 S.E.2d 264, 268 (2003). The trial court's determination regarding the best interests of the child will not be disturbed unless there is "`a clear showing of abuse of discretion.'" Dixon v. Dixon, 67 N.C. App. 73, 76, 312 S.E.2d 669, 672 (1984) (quoting King v. Demo, 40 N.C. App. 661, 668, 253 S.E.2d 616, 621 (1979)). An abuse of discretion "is shown only when the court's decision `is manifestly unsupported by reason or is so arbitrary that it could not havebeen the result of a reasoned decision.'" Barton v. Sutton, 152 N.C. App. 706, 710, 568 S.E.2d 264, 266 (2002) (quoting State v. McDonald, 130 N.C. App. 263, 267, 502 S.E.2d 409, 413 (1998)).
Facts
From the day G.L. was born, 30 December 1991, until he was about two years old, he lived with Ms. Carroll and her parents, Betty and Jay Laird, in the Lairds' home in Candler, North Carolina. Ms. Laird, rather than Ms. Carroll, provided primary care for G.L.[1] Although Ms. Carroll moved out of the Lairds' home when the child was two years old, G.L. continued to live with and be cared for by the Lairds.
When the child was three years old, Ms. Carroll moved into a mobile home 150 yards from the Lairds' home. During the next three years, Ms. Laird continued to care for G.L. while Ms. Carroll worked; G.L. often spent nights and weekends with the Lairds; and G.L. went to the Lairds' home when he was upset or afraid because of fighting between Ms. Carroll and her new husband. Ms. Carroll often became angry and damaged objects and the mobile home. During this period, G.L. was in Ms. Laird's care for at least half the time.
Shortly after G.L. began first grade, Ms. Carroll and herhusband moved to Franklin, North Carolina, leaving G.L. with Ms. Laird. Although after a few weeks, Ms. Carroll retrieved G.L., she later returned him to Ms. Laird and Ms. Laird enrolled him in first grade in Candler. Ms. Carroll visited him on occasional weekends.
While in Franklin, Ms. Carroll continued to experience episodes of intense, destructive anger. After being evicted from their Franklin home, the Carrolls returned to the mobile home near the Lairds, but G.L. stayed with Ms. Laird most nights. The Carrolls had violent arguments, but Ms. Carroll told G.L. not to let Ms. Laird know. After several months, the Carrolls separated and Ms. Carroll moved into the Lairds' home. Even so, Ms. Laird continued to be the primary caretaker of G.L. In the fall of G.L.'s second-grade year, however, Ms. Carroll had a dispute with her mother, moved out with her son, and told Ms. Laird that she would never see the child again.
Until that point, Ms. Laird had been the primary caregiver for G.L. for most of his life. She had been primarily responsible for taking him to doctors and dentists; she, rather than Ms. Carroll, had been involved in his school activities; she had purchased almost all of his clothes and school supplies; and she had involved him in church and church activities.
On 19 December 2000, in response to her daughter's threat to deprive her of contact with her grandchild, Ms. Laird filed suitseeking custody of and visitation with her grandchild. Over time, the court entered a series of orders, granting Ms. Carroll custody, providing Ms. Laird with visitation, ordering Ms. Carroll to complete a substance-abuse assessment, and directing Ms. Carroll to enroll her son in therapy.
The court found, based on the testimony of school officials, that during the time G.L. resided with Ms. Laird, he arrived at school on time, was calm and prepared, and had his homework complete. When Ms. Carroll had primary care, G.L.'s attendance was poor, he was frequently late (receiving more than 100 "tardies" in the third and fourth grades), he often arrived without having had breakfast, his grades fell significantly, and he had disciplinary problems. When school officials attempted to communicate with Ms. Carroll about the child's unexcused absences and disciplinary problems, she either did not respond or was rude and hostile.
On 21 December 2001, the court found Ms. Carroll to be in willful contempt of the prior orders for repeatedly failing to grant Ms. Laird her visitation. The trial court deferred ruling on sanctions until a later hearing, but admonished Ms. Carroll to comply with the prior orders and ordered her to provide documentation that she and G.L. had been receiving therapy.
Following a hearing on 21 February 2002 that Ms. Carroll chose not to attend, the trial court found (1) that Ms. Carroll hadfailed to document compliance with the requirement that she provide G.L. with counseling and that she complete an anger management program and (2) that Ms. Carroll had continued to violate Ms. Laird's right to visitation. The court, however, again held open the issue of sanctions pending further hearing. At the next hearing on 25 March 2002, Ms. Carroll arrived an hour late. In its order following the hearing, the court noted that "[it] had serious concerns over the Defendant's attentiveness to the necessary details of this case . . . ." The court found that Ms. Carroll had failed to comply with prior orders regarding G.L.'s counseling and anger management. The court appointed a guardian ad litem to investigate Ms. Laird's allegations and assist the court in determining the best interests of G.L.
The matter was peremptorily set for hearing the week of 5 June 2002 and the court instructed the parties to have their witnesses available. Following the filing of the guardian ad litem's report, Ms. Carroll moved for a continuance to obtain witnesses to respond to that report. At the 5 June 2002 hearing, the parties stipulated that the guardian ad litem's report would be admitted. Although granting Ms. Carroll's request for a continuance, the trial court ordered joint custody between the parties with alternating weekly placement pending a further hearing. Ms. Carroll, however, failed to comply with the order, causing Ms. Laird to file a motion toshow cause on 19 December 2002.
In November 2002, the fall of G.L.'s fifth-grade year, Ms. Carroll remarried. In March 2003, police responded to a domestic dispute that occurred with G.L. present and while Ms. Carroll's new husband was intoxicated. During the fifth grade, G.L.'s grades continued to fall, he was sent to the principal's office six times, and he had excessive unexcused absences and tardies. The court found that Ms. Carroll drove G.L. to school on multiple occasions although she does not have a valid North Carolina driver's license. The school counselor was concerned that the child's disciplinary problems were related to Ms. Carroll's remarriage. While Ms. Carroll did not respond to communications from the school, Ms. Laird continued to meet with G.L.'s teachers to discuss his school performance.
On 14 February 2003, the trial court found Ms. Carroll in willful contempt of its prior orders, but - at the parties' request - did not impose sanctions and instead admonished Ms. Carroll to allow the court-ordered visitation. Immediately following the hearing, however, Ms. Carroll failed to comply. When it entered its written order, the court found "that defendant has been found in willful contempt of the orders of this Court on two occasions and has continued to make it clear that she will not follow the orders of this Court." Following an evidentiary hearing in March and April 2003, the court entered an order on 19 May 2003, concluding "[t]hat there is convincing evidence that the defendant has neglected her minor child . . ., such that she should not have custody of him and that she has thereby waived her paramount constitutional right to custody and control of said child" and "[t]hat the plaintiff is a fit and proper person to have custody of [the child] and it is in his best interest that she have custody of him." The court granted Ms. Laird primary custody and Ms. Carroll weekend visitation. Ms. Carroll filed notice of appeal from the court's 19 May 2003 order on 20 May 2003.
Ms. Carroll's Constitutionally Protected Right
In challenging the trial court's determination that she engaged in conduct inconsistent with her protected status, Ms. Carroll first argues that the evidence was inadequate to support the trial court's findings of fact. Ms. Carroll did not, however, specifically assign error to any of the trial court's findings of fact. Instead, her sole pertinent assignment of error states only: "The court's Finding[s] of Facts are not supported by clear and convincing evidence and are therefore erroneous."
It is well-established that "[a] single assignment [of error] generally challenging the sufficiency of the evidence to support numerous findings of fact, as here, is broadside and ineffective"under N.C.R. App. P. 10. Wade v. Wade, 72 N.C. App. 372, 375-76, 325 S.E.2d 260, 266, disc. review denied, 313 N.C. 612, 330 S.E.2d 616 (1985). Because Ms. Carroll has not properly assigned error to any specific findings of fact, the trial court's findings are binding on this Court. Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal."). Those findings and the trial court's other prior unchallenged orders established the above-recited facts.
In any event, Ms. Carroll acknowledges that the court's findings of fact were supported by the testimony of Ms. Laird and her husband and by the guardian ad litem's report. She contends, however, that the trial court erred in accepting this evidence as credible and that it was insufficient to overcome her evidence. Questions of credibility and weight are solely within the discretion of the trial judge when sitting as the trier of fact. Westneat v. Westneat, 113 N.C. App. 247, 250, 437 S.E.2d 899, 900 (1994). The trial court was free to choose to believe the Lairds' and school officials' testimony over that of Ms. Carroll. With respect to the guardian ad litem report, Ms. Carroll also complains that it contains "unsworn, biased statements from a collection of incompetent, unreliable witnesses" and could not, therefore, forma basis for the trial court's findings of fact. Ms. Carroll, however, stipulated to the report's admission into evidence and the trial court accordingly properly relied upon it.
The sole question properly before this Court is whether the findings of fact support the conclusion of law that Ms. Carroll neglected G.L. and waived her paramount constitutional right to custody. Although it is unnecessary for a court to find that a parent's conduct rose to the level warranting termination of parental rights, a court's finding of neglect, abandonment, or any of the other grounds set forth in N.C. Gen. Stat. §7B-1111 may result in a loss of a parent's protected status. Owenby, 357 N.C. at 145, 579 S.E.2d at 267. See also Price, 346 N.C. at 79, 484 S.E.2d at 534 ("Unfitness, neglect, and abandonment clearly constitute conduct inconsistent with the protected status parents may enjoy."). In Speagle v. Seitz, 354 N.C. 525, 531, 557 S.E.2d 83, 87 (2001), the Supreme Court stressed "that any past circumstance or conduct which could impact either the present or the future of a child is relevant, notwithstanding the fact that such circumstance or conduct did not exist or was not being engaged in at the time of the custody proceeding."
In this case, the court made detailed findings regarding Ms. Carroll's conduct. They included (1) leaving G.L. in Ms. Laird's care for extended periods of time and, even when Ms. Carroll waspresent in Ms. Laird's home, allowing Ms. Laird to be primarily responsible for G.L.'s care, supervision, and necessities; (2) exposing the child to substantial domestic violence and emotional upheaval in his home; (3) failing to ensure that he received necessary counseling and a proper education; and (4) willfully violating court orders entered in the best interests of the child.
These findings regarding the child's care are consistent with the statutory definition of a "[n]eglected juvenile":
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker . . . or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare . . . .
N.C. Gen. Stat. § 7B-101(15) (2003). See, e.g., Pratt v. Bishop, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962) ("Certainly a continued wilful failure to perform the parental duty to support and maintain a child would be evidence that a parent had relinquished his claim to the child."); In re Davis, 116 N.C. App. 409, 414, 448 S.E.2d 303, 306 (parents' failure to "obtain[] continued counseling, a stable home, stable employment, and [attend] parenting classes" was sufficient to show a probability that neglect would be repeated if child were returned to the care of the parents), disc. review denied, 338 N.C. 516, 452 S.E.2d 808 (1994); In re McMillan, 30 N.C. App. 235, 238, 226 S.E.2d 693, 695(1976) ("It is fundamental that a child who receives proper care and supervision in modern times is provided a basic education.").
Further, our Supreme Court has observed that a parent's "failure to maintain personal contact with the child or failure to resume custody when able" may alone amount to conduct inconsistent with protected parental interests. Price, 346 N.C. at 83-84, 484 S.E.2d at 537.[2] Here, the trial court's findings reveal that, for much of G.L.'s life, Ms. Carroll abdicated responsibility for her son to her mother, Ms. Laird. These findings are sufficient to support the conclusion that Ms. Carroll acted in a manner inconsistent with her status as a parent. Ellison v. Ramos, 130 N.C. App. 389, 398-99, 502 S.E.2d 891, 897 (allegations that the father had relinquished custody of his child to others on several occasions "support a conclusion that [the father] has acted in a manner inconsistent with his protected status as a parent"), appeal dismissed, 349 N.C. 356, 517 S.E.2d 891 (1998).
Accordingly, we hold that the trial court's findings of fact supported its conclusion of law that Ms. Carroll's conduct wasinconsistent with the constitutionally protected right of a parent to custody and control of her child.
The Award of Custody to the Child's Grandmother
Following the trial court's initial determination regarding the nature of Ms. Carroll's conduct, the court was required to consider the best interests of the child in deciding whether to award Ms. Laird custody. Speagle, 354 N.C. at 531-32, 557 S.E.2d at 87 ("[W]e note that findings of fact of a parent's conduct inconsistent with that parent's protected status, whether related to past or present conduct, do not in and of themselves determine custody. A finding of inconsistent conduct merely triggers the best interests of the child analysis."). Ms. Carroll did not assign error to the trial court's decision regarding the best interests of the child. That decision, therefore, is not properly before us. N.C.R. App. P. 10(a) ("[T]he scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal in accordance with this Rule 10.").
In her brief, however, Ms. Carroll complains that the trial court did not conduct any additional analysis before making the "best interests" determination. It is unclear what procedure Ms. Carroll contends that the trial court should have followed. Before awarding custody, the trial court must conclude as a matter of law that the award of custody to a particular party "willbest promote the interest and welfare of the child." N.C. Gen. Stat. § 50-13.2(a). The court must make findings as to the "characteristics of the competing parties," such as physical, mental, or financial fitness or any other factors brought out by the evidence and relevant to the issue of the welfare of the child. Steele v. Steele, 36 N.C. App. 601, 604, 244 S.E.2d 466, 468 (1978). The findings must be sufficiently detailed so that a reviewing court may determine whether the award of custody is, in fact, in the child's best interest. Dixon, 67 N.C. App. at 76-77, 312 S.E.2d at 672.
Here, the trial court made the necessary findings and specifically concluded that awarding custody to Ms. Laird was in the best interests of the child. Based on those findings - describing G.L.'s significantly better school performance when in the care of Ms. Laird, the anger and violence surrounding Ms. Carroll, and Ms. Carroll's unwillingness to follow the court's orders (including obtaining necessary therapy for her son) - we conclude that the trial court did not abuse its discretion in awarding custody to Ms. Laird.
Affirmed.
Judges HUDSON and THORNBURG concur.
Report per Rule 30(e).

The child's father is unknown and was not a party to this action.

Ms. Carroll has not argued that circumstances required her to relinquish custody for the benefit of the child. Compare Price, 346 N.C. at 83, 484 S.E.2d at 537 ("[T]here are circumstances where the responsibility of a parent to act in the best interest of his or her child would require a temporary relinquishment of custody, such as under a foster-parent agreement or during a period of service in the military, a period of poor health, or a search for employment.").