BARRY W. SEYBOTH, Plaintiff-Appellee v. ABIGAIL B. SEYBOTH, Defendant-Appellant

No. COA00-1160

(Filed 6 November 2001)

**Child Support, Custody, and Visitation—visitation—stepparent—*Petersen* analysis required**

The trial court erred by awarding visitation rights to plaintiff as to his ex-stepchild based on a best interest analysis without first determining whether defendant engaged in conduct inconsistent with her parental rights and responsibilities. Plaintiff did not adopt his stepchild and now has the status of a nonparent who has standing to sue under N.C.G.S. § 50-13.1(a); however, regardless of how compelling and significant the relationship may be, the trial court could not grant visitation based solely on the best interest analysis.

Appeal by defendant from order denying stay and new trial entered 31 July 2000 by Judge Thomas G. Foster, Jr. in Guilford County District Court. Heard in the Court of Appeals 11 September 2001.

*Hatfield & Hatfield, by Kathryn K. Hatfield, for plaintiff-appellee.*

*Gray, Newell, Johnson & Blackmon, L.L.P., by Angela Newell Gray, for defendant-appellant.*

BRYANT, Judge.

This appeal arises out of proceedings in Guilford County District Court in which plaintiff stepparent Barry W. Seyboth was awarded visitation rights as to his ex-stepchild Nicholas David Brown by order dated 5 November 1999. Defendant mother Abigail B. Seyboth moved for a new trial and moved to stay the execution of the order. Both of defendant's motions were denied by order filed 31 July 2000. Defendant appeals.

## SEYBOTH v. SEYBOTH

[147 N.C. App. 63 (2001)]

The material facts of this case are not in dispute. Defendant is the biological mother of Nicholas born 22 August 1993. Nicholas' father died before Nicholas was born. After the natural father's death, defendant and Nicholas lived with members of defendant's family until February 1995, when defendant and plaintiff were married. Following the marriage, Nicholas lived with plaintiff and defendant. Plaintiff and defendant are the biological parents of another child, Gabriel W. Seyboth, who is not the subject of this action.

During the marriage, Nicholas referred to plaintiff as his "daddy" even though Nicholas was aware that his natural father predeceased him. The trial court found:

The Plaintiff has taken on the role of father to the child. The Defendant has allowed and encouraged the Plaintiff to assume the position of father to the child and at no time told him that it was a temporary position. On recent occasions when the child was in distress, he called for "Daddy" along with other relatives to whom he is strongly bonded.

Although plaintiff discussed the issue of adoption with defendant, plaintiff chose not to adopt Nicholas.

Plaintiff and defendant separated on 16 May 1998 and were divorced approximately one year later. Initially, plaintiff regularly visited with Nicholas during the separation. Beginning in August 1998, however, plaintiff's visits with Nicholas ceased. The parties' testimony differed as to why visitation ended. After the divorce, defendant was awarded custody of both Nicholas and Gabriel. Plaintiff was awarded visitation rights with Gabriel, but not with Nicholas.

Plaintiff filed a complaint on 23 August 1999 seeking visitation rights with Nicholas. The trial court found that both plaintiff and defendant were "fit and proper persons to have custody and visitation with [Nicholas]." The trial court also found that to deny plaintiff visitation rights would be to "interfere with the natural stability of the home which was established by the Plaintiff and Defendant together when they permitted Nicholas to bond with the Plaintiff as his father."

The trial court went on to find that it was in Nicholas' best interest for him to have ongoing visitation with plaintiff. The trial court then ordered that plaintiff have visitation rights with Nicholas on certain weekends, holidays, birthdays, and during parts of each summer.

SEYBOTH v. SEYBOTH

[147 N.C. App. 63 (2001)]

Defendant assigns error to the trial court's granting of plaintiff's visitation with Nicholas by order filed 5 November 1999, and the trial court's denial of defendant's motion to stay and motion for a new trial by order filed 31 July 2000. The record does not reflect that defendant gave notice of appeal from the 5 November 1999 order, therefore, any assignment of error or argument pertaining to that order is not properly before this Court. *See* N.C.R. App. P. 3 (2001); N.C.R. App. P. 10 (2001). *See also Von Ramm v. Von Ramm,* 99 N.C. App. 153, 156, 392 S.E.2d 422, 424 (1990) ("Proper notice of appeal requires that a party 'shall designate the judgment or order from which appeal is taken . . . [.]' 'Without proper notice of appeal, this Court acquires no jurisdiction.' " (citations omitted)).

Notwithstanding the lack of proper notice of appeal, this Court will consider defendant's assignment of error to the 5 November 1999 order as a petition for *writ of certiorari.* Having determined defendant's petition has merit, this Court will exercise its discretion and grant *certiorari* to review the first assignment of error pursuant to N.C.R. App. P. 21 (2001). *See Anderson v. Hollifield,* 345 N.C. 480, 482, 480 S.E.2d 661, 663 (1997) (concluding "that Rule 21(a)(1) gives an appellate court the authority to review the merits of an appeal by certiorari even if the party has failed to file notice of appeal in a timely manner").

The dispositive issue in this case is whether the trial court properly determined that allowing the plaintiff stepparent visitation rights would be in the best interest of his ex-stepchild. Based on the following reasons, this Court finds that the trial court improperly granted visitation. The matter is reversed and remanded to the trial court with instructions.

> In a child custody case, the trial court's findings of fact are binding on this Court if they are supported by competent evidence, and its conclusions of law must be supported by its findings of fact. . . . *And the findings and conclusions of the trial court must comport with our case law regarding child custody matters.*

*Cantrell v. Wishon,* 141 N.C. App. 340, 342, 540 S.E.2d 804, 805-06 (2000) (emphasis added) (citation omitted).

We initially note that plaintiff has standing to sue for visitation rights pursuant to N.C.G.S. § 50-13.1(a) (2000). N.C.G.S. § 50-13.1(a) provides: "Any parent, relative, or *other person* [nonparent] . . . claim-

ing the right to custody of a minor child may institute an action or proceeding for the custody of such child . . . . Unless a contrary intent is clear, the word 'custody' shall be deemed to include custody or visitation or both." (emphasis added). In addition, the person claiming standing must show he has a relationship with the child. *See Ellison v. Ramos*, 130 N.C. App. 389, 394, 502 S.E.2d 891, 894, *rev. denied by* 349 N.C. 356, 517 S.E.2d 891 (1998) (stating that to assume standing in a child custody dispute, a third party must have a relationship sufficient to show that the third party is not a stranger to the child).

For the purposes of our child custody analysis in the case at bar, plaintiff stepparent assumes the status of a nonparent as he did not adopt Nicholas. *See Black's Law Dictionary* 1137 (7th ed. 1999), ("The term [parent] commonly includes (1) either the natural father or the natural mother . . . (2) *the adoptive father or adoptive mother* . . . (3) a child's putative blood parent who has expressly acknowledged paternity, and (4) an individual or agency whose status as guardian has been established by judicial decree.") (emphasis added). *See, e.g.,* cases using terms parent and natural parent interchangeably. *Adams v. Tessener*, 354 N.C. 57, 550 S.E.2d 499 (2001); *Brewer v. Brewer*, 139 N.C. App. 222, 533 S.E.2d 541 (2000); *In re Gwaltney*, 68 N.C. App. 686, 315 S.E.2d 750 (1984).

The seminal case in our state regarding custody and visitation rights of parents versus nonparents is *Petersen v. Rogers*, 337 N.C. 397, 445 S.E.2d 901 (1994). In *Petersen*, the Supreme Court of North Carolina noted this state's long-standing tradition of recognizing "the paramount right of parents to [the] custody, care, and nurture of their children . . . ." *Petersen*, 337 N.C. at 402, 445 S.E.2d at 904. *Petersen* explicitly rejected the notion that a nonparent merely had to overcome a "higher evidentiary standard" in order to obtain child custody. *Id.* The Court also rejected the argument that "the welfare of the child is paramount to all common law preferential rights of the parents." *Id.* Ultimately, the *Petersen* Court formulated the following test in determining custody rights of a natural parent versus a nonparent: "absent a finding that parents (i) are unfit or (ii) have neglected the welfare of their children, the constitutionally-protected paramount right of parents to [the] custody, care, and control of their children must prevail." *Petersen*, 337 N.C. at 403-04, 445 S.E.2d at 905.

In *Price v. Howard*, 346 N.C. 68, 484 S.E.2d 528 (1997), our Supreme Court refined the test enunciated in *Petersen.* The *Price* Court considered, in a child custody dispute between a parent and a

**SEYBOTH v. SEYBOTH**

[147 N.C. App. 63 (2001)]

nonparent, whether application of the best interest of the child analysis was limited to situations where the parent acted inconsistently with their rights as a parent.

In *Price,* the Court expanded upon the rights and responsibilities of natural parents and stated:

A natural parent's constitutionally protected paramount interest in the companionship, custody, care, and control of his or her child is a counterpart of the parental responsibilities the parent has assumed and is based on a presumption that he or she will act in the best interest of the child. Therefore, the parent may no longer enjoy a paramount status if his or her conduct is inconsistent with this presumption or if he or she fails to shoulder the responsibilities that are attendant to rearing a child. *If a natural parent's conduct has not been inconsistent with his or her constitutionally protected status, application of the "best interest of the child" standard in a custody dispute with a nonparent would offend the Due Process Clause.* However, conduct inconsistent with the parent's protected status, which need not rise to the statutory level warranting termination of parental rights, would result in the application of the "best interest of the child" test without offending the Due Process Clause.

*Price,* 346 N.C. at 79, 484 S.E.2d at 534 (emphasis added) (citations omitted). Accordingly, only after the trier of fact has found the parent has acted in a manner inconsistent with his or her protected status may application of the best interest of the child test be appropriate.

This Court has on several occasions applied the rules stated in *Petersen* and *Price* to custody cases between parents and nonparents. *See Speagle v. Seitz,* 141 N.C. App. 534, 537, 541 S.E.2d 188, 190 (2000), *stay allowed by,* 353 N.C. 381, 546 S.E.2d 609, and *rev. allowed, writ allowed, and appeal dismissed by* 353 N.C. 381, 547 S.E.2d 415 (2001) (reversing the trial court's award of custody to a third party because the trial court applied the best interest test without first determining whether the parent's conduct had any negative impact on the child or had a substantial risk of causing the child harm); *Cantrell,* 141 N.C. App. at 344, 540 S.E.2d at 807 (ruling there were insufficient facts to support the trial court's conclusion that the mother acted inconsistently with her constitutionally protected status); *Brewer,* 139 N.C. App. at 232, 533 S.E.2d at 549 (holding that "a parent who voluntarily gave custody to the other parent and has never been adjudged unfit does not lose her *Peterson*

presumption against a non-parent third party so long as the non-parent third party does not have court-ordered custody."); *Penland v. Harris*, 135 N.C. App. 359, 362, 520 S.E.2d 105, 107 (1999) ("a third party . . . who seeks custody of a minor child as against the child's natural parent, must allege facts sufficient to show that the natural parent has acted in a manner inconsistent with his or her constitutionally protected status.").

In the case *sub judice*, the trial court erred in applying the best interest of the child analysis without first determining whether defendant engaged in conduct inconsistent with her parental rights and responsibilities. Defendant, as the natural mother of the child, possesses a constitutionally protected paramount interest in the companionship, custody, care, and control of her child and is presumptively entitled to custody of her natural child. *See Price*, 346 N.C. at 79, 484 S.E.2d at 534. The trial court should have applied the best interest of the child test only if it found defendant acted inconsistently with her status as the natural mother. *See id.*

We note that other states vary as to what test should apply when deciding custody disputes between a parent and a stepparent. *See, e.g., In re Ewing*, 96 Idaho 424, 529 P.2d 1296 (1974) (stating that although there existed a presumption that a natural parent should have custody of the child, the stepfather was properly awarded custody after the natural mother's death); *Com. ex rel. Husack v. Husack*, 273 Pa. Super. Ct. 192, 417 A.2d 233 (1979) (finding that in granting custody to the stepmother instead of the natural father, the primary consideration was the best interests of the children). *See generally* Mary E. Wright-Hunt, *Equating a Stepparent's Rights and Liabilities Vis-a-Vis Custody Visitation and Support Upon Dissolution of the Marriage with Those of the Natural Parent-An Equitable Solution to a Growing Dilemma?*, 17 N.C. Cent. L.J. 1 (1988); Wendy Evans Lehmann, J.D., Annotation, *Award of Custody of Child Where Contest is Between Natural Parent and Steparent*, 10 A.L.R. 4th 767 (1981).

Our case law as enunciated in *Peterson* and refined by *Price*, however, is very clear. Regardless of the compelling and significant relationship between the stepfather and ex-stepchild in the case *sub judice*, the trial court could not grant the stepfather visitation solely based on the best interest analysis.

This matter is reversed and remanded with instructions for the trial court to allow the parties the opportunity to offer new evidence.

Thereafter, the trial court should make findings of fact regarding whether defendant acted inconsistently with her rights as a natural parent. If so, then the court should determine if it is in the best interest of the child for the plaintiff to have visitation rights. *See Price,* 346 N.C. at 84, 484 S.E.2d at 537 ("The . . . case is remanded to the Court of Appeals for further remand to District Court . . . for a determination of whether defendant's conduct was inconsistent with the constitutionally protected status of a natural parent. If so, then the court should determine custody based on the 'best interest of the child' standard . . . ."); *Cantrell,* 141 N.C. App. at 344, 540 S.E.2d at 807 ("As in *Price,* we remand this case to the district court to make findings of fact on whether the mother acted inconsistently with her constitutionally protected status, and if so, to then apply the 'best interests of the child' test to determine which party should have custody of the children.").

Having reversed and remanded this matter to the trial court, we find that it is unnecessary to address defendant's second assignment of error concerning the denial of the motion to stay and motion for a new trial.

REVERSED and REMANDED.

Judges GREENE and CAMPBELL concur.