STACY M. MYERS AND KENNY W. MYERS, PLAINTIFFS v. STEPHANIE BALDWIN AND LEONARD PRESTON BAKER, III, DEFENDANTS

No. COA10-97

(Filed 20 July 2010)

**Child Custody and Support— unrelated third parties seeking custody—standing—brief relationship**
    Plaintiffs lacked standing, and the trial court lacked subject matter jurisdiction, to hear plaintiffs' claim seeking custody of a child from the natural parent, where plaintiffs' contact with the child began only two months before the complaint was filed. Those two months cannot be said to be the significant amount of time necessary for plaintiffs to have established a parent-child relationship with the child. Moreover, the alleged unfitness of defendant as a parent cannot be raised independently by plaintiffs, who are unrelated third parties.

Appeal by defendant from order entered 6 August 2009 by Judge Denise S. Hartsfield in Forsyth County District Court. Heard in the Court of Appeals 8 June 2010.

*Theodore M. Molitoris, for plaintiff-appellees.*

*Dawson Law Firm, PLLC, by Clint E. Dorman, for defendant-appellant Leonard Preston Baker, III.*

CALABRIA, Judge.

Leonard Preston Baker, III ("defendant") appeals the trial court's order granting primary custody of his minor child to Stacy M. Myers ("Ms. Myers") and Kenny W. Myers (collectively "plaintiffs"). We reverse.

## I. Background

Defendant and Stephanie Baldwin ("Ms. Baldwin") are the natural parents of the minor child "Nathaniel[1]", who was born 9 May 2006. Defendant resides with his girlfriend, Tracey Garrison ("Ms. Garrison"). Ms. Garrison is the natural mother of one child, "Alice", and she shares legal and physical custody of Alice with David and Julie Green ("the Greens").

Until 26 September 2008, the Greens assisted defendant by providing informal care for Nathaniel. On 26 September 2008, Ms. Myers expressed an interest in assisting the Greens by providing child care for Nathaniel during that weekend. At that time, plaintiffs were completely unknown to defendant.

For the next two months, plaintiffs provided Nathaniel with the vast majority of his care, including medical care. Specifically, Nathaniel needed treatment for pink eye, sinusitis, and ear infections. Plaintiffs paid for all medical care and all prescriptions Nathaniel needed to treat these illnesses. Defendant only visited with Nathaniel for short periods of time during the two months Nathaniel was in plaintiffs' primary care.

On 26 November 2008, plaintiffs filed a complaint in Surry County District Court, seeking both temporary and permanent primary physical custody of Nathaniel. Pending a full and final custody hearing, the trial court entered an ex-parte Temporary Custody Order awarding temporary custody to plaintiffs that same day. Venue was transferred to Stokes County on 6 January 2009, *nunc pro tunc* 17 December 2009, and then transferred again to Forsyth County on 23 March 2009. Custody remained with plaintiffs during this time.

---

1. Minor children are referred to by pseudonyms throughout this opinion.

On 24 April 2009, the trial court modified the Temporary Custody Order and granted the parties alternating weeks of temporary custody with the minor child pending a full hearing on custody. In addition, the parties were ordered to attend custody mediation. The custody hearing was conducted from 21-22 July 2009. Ms. Baldwin was unable to be located, and as a result, was not served with process and did not appear at the custody hearing. On 6 August 2009, the trial court entered an order granting primary custody to plaintiffs and secondary custody to defendant. The trial court retained jurisdiction for the limited purpose of ruling on attorney's fees, pending the filing of a fee affidavit. Defendant appeals.

## II.  Standing

"Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *Aubin v. Susi*, 149 N.C. App. 320, 324, 560 S.E.2d 875, 878 (2002). While the issue of standing was not raised by defendant in his brief, "issues pertaining to standing may be raised for the first time on appeal, including *sua sponte* by the Court." *Id.* at 324, 560 S.E.2d at 879. "[P]laintiffs have the burden of proving that standing exists." *Am. Woodland Indus., Inc. v. Tolson*, 155 N.C. App. 624, 627, 574 S.E.2d 55, 57 (2002) (citation omitted).

Pursuant to N.C. Gen. Stat. § 50-13.1(a), "[a]ny parent, relative, or other person, agency, organization or institution claiming the right to custody of a minor child may institute an action or proceeding for the custody of such child, as hereinafter provided." N.C. Gen. Stat. § 50-13.1(a) (2009). However, "our Supreme Court has indicated that there are limits on the 'other persons' who can bring such an action. A conclusion otherwise would conflict with the constitutionally-protected paramount right of parents to custody, care, and control of their children." *Mason v. Dwinnell*, 190 N.C. App. 209, 219, 660 S.E.2d 58, 65 (2008) (internal quotations and citation omitted).

In a situation involving a third party characterized as an "other person" under N.C. Gen. Stat. § 50-13.1(a), this Court has held that "the relationship between the third party and the child is the relevant consideration for the standing determination." *Ellison v. Ramos*, 130 N.C. App. 389, 394, 502 S.E.2d 891, 894 (1998). Although the *Ellison* Court acknowledged that "a third party who has no relationship with a child does not have standing under N.C. Gen. Stat. § 50-13.1 to seek custody of a child from a natural parent," the Court ultimately determined that "where a third party and a child have an established relationship in the nature of a parent-child relationship, the third party

does have standing as an 'other person' under N.C. Gen. Stat. § 50-13.1(a) to seek custody." *Id.* at 394-95, 502 S.E.2d at 894-95.

> No appellate court in North Carolina has attempted to draw any bright lines for how long the period of time needs to be or how many parental obligations the person must have assumed in order to trigger standing against a parent, but the existence of a *significant relationship for a significant time should suffice.*

3 Suzanne Reynolds, *Lee's North Carolina Family Law* § 13.4d, at 13-24 (5th ed. 2002) (emphasis added).

Previous cases in which this Court has held that a third party had standing to seek custody against a natural parent involved significant relationships over extensive periods of time. In *Ellison,* this Court held that a woman with no biological ties to the child had standing to seek a custody determination when she had lived with the child during a five-year period while she was in a relationship with the child's biological father. 130 N.C. App. at 396, 502 S.E.2d at 895. The *Ellison* Court noted that the plaintiff alleged that she was the "only mother the minor child has known" and that she

> was the responsible parent in the rearing and caring for the minor child, as she was the adult who took the minor child to her medical appointments, to school, attended teacher conferences, took the minor child for diabetic treatment and counseling, provided in-home medical care and treatment for her diabetes, taught her about caring [for] her diabetes, and bought all the child's necessities, including clothing, school supplies, medical supplies, toys, books, etc.

*Id.*

In *Seyboth v. Seyboth,* this Court held that a stepfather had standing to seek visitation rights when he had lived with the child for three years prior to divorcing the child's natural mother. 147 N.C. App. 63, 65-66, 554 S.E.2d 378, 380-81 (2001). The *Seyboth* Court noted the trial court's finding that the plaintiff stepfather

> has taken on the role of father to the child. The Defendant has allowed and encouraged the Plaintiff to assume the position of father to the child and at no time told him that it was a temporary position. On recent occasions when the child was in distress, he called for "Daddy" along with other relatives to whom he is strongly bonded.

*Id.* at 64, 554 S.E.2d at 380.

Finally, in *Mason*, this Court held that a woman with no biological ties to the child had standing to seek a custody determination when she had lived with the child for four years while in a relationship with the child's biological mother and then shared custody with the child's biological mother for more than two years after the couple separated. 190 N.C. App. at 212-14; 220-21, 660 S.E.2d at 60-62; 65-66. The *Mason* Court held that the plaintiff had standing because the plaintiff and the defendant had

> jointly raised the child; they entered into an agreement in which they each acknowledged that Mason was a *de facto* parent and had "formed a psychological parenting relationship with the parties' child;" and "[t]he minor child has lived all his life enjoying the equal participation of both [Mason] and [Dwinnell] in his emotional and financial care and support, guidance and decision-making."

*Id.* at 220, 660 S.E.2d at 65.

The facts of the instant case stand in stark contrast to *Ellison*, *Seyboth*, and *Mason*. Plaintiffs' own counsel acknowledged the tenuous relationship between plaintiffs and Nathaniel when he attempted to explain the relationship to the trial court.

> MR. MOLITORIS: Of course I represent Ms. Myers and her husband Kenny who are seated here. They have the status of third parties.
>
> THE COURT: Third-party interven[o]rs?
>
> MR. MOLITORIS: No, they are the plaintiffs.
>
> THE COURT: All right.
>
> MR. MOLITORIS: But in the custody realm of parent—
>
> THE COURT: —Right.
>
> MR. MOLITORIS: —Versus third parties, they are third parties.
>
> THE COURT: By way of being grandparents?
>
> MR. MOLITORIS: No.
>
> MS. MYERS: No.
>
> THE COURT: All right.
>
> MR. MOLITORIS: Strangers.
>
> THE COURT: All right.

Plaintiffs filed their complaint seeking custody of Nathaniel on 26 November 2008. The allegations in plaintiffs' complaint acknowledge that plaintiffs first had contact with Nathaniel on 26 September 2008, a mere two months prior to the filing of the complaint. Even taking into account the fact that Nathaniel was only two-and-a-half years old when plaintiffs sought custody, it is simply impossible under the facts of the instant case to characterize those two months as the significant amount of time necessary for plaintiffs to have established a parent-child relationship with Nathaniel. This is especially true when considering that Nathaniel had contact with defendant for short periods of time during these two months.

Moreover, the facts alleged in plaintiffs' complaint fall short of establishing a significant relationship between plaintiffs and Nathaniel in comparison to the significant relationships that existed in *Ellison, Seyboth,* and *Mason.* Plaintiffs' complaint only alleges (1) that plaintiffs cared for Nathaniel for a two-month period between 26 September 2008 and 26 November 2008; and (2) that plaintiffs provided, at their own expense, needed medical care for Nathaniel, including vaccinations. Plaintiffs' actions during the two months they cared for Nathaniel were admirable, and we do not intend to minimize the importance of the care that plaintiffs provided to Nathaniel. However, the care provided cannot be characterized as rising to the level of establishing a parent-child relationship.

The remainder of plaintiffs' complaint contains allegations about the unfitness of Nathaniel's natural parents. If the defendant is truly unable to provide adequate and necessary supervision, care and control for Nathaniel, the Department of Social Services could provide those services. The alleged unfitness of defendant cannot be raised independently by plaintiffs, because the Constitution protects the relationship between a natural parent and a child from interference by unrelated third parties. *Mason,* 190 N.C. App. at 219, 660 S.E.2d at 65.

Plaintiffs have failed to present facts sufficient to establish a significant relationship for a significant time between themselves and Nathaniel. Therefore, we determine that plaintiffs lacked standing to seek custody under N.C. Gen. Stat. § 50-13.4(a). Since plaintiffs lacked standing to pursue custody of Nathaniel, the trial court lacked subject matter jurisdiction to hear plaintiffs' claims and its order must be reversed.

**IN RE H.N.D.**

[205 N.C. App. 702 (2010)]

## IV. Conclusion

Defendant did not raise the issue of standing in his brief. However, pursuant to *Aubin*, we raise the issue *sua sponte* and determine that plaintiffs failed to establish standing to seek custody of Nathaniel from defendant, the natural parent of Nathaniel. Therefore, the trial court lacked subject matter jurisdiction to hear plaintiffs' claim, and as a result, the trial court's order must be reversed.

Reversed.

Judges WYNN and HUNTER, Robert C. concur.