IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-93

 Filed: 2 October 2018

Durham County, No. 16-CVD-1317

EMILY SUSANNA CHÁVEZ, Plaintiff

 v.

SERENA SEBRING WADLINGTON and JOSEPH FITZGERALD WADLINGTON,
Defendants

 Appeal by plaintiff from order entered 28 August 2017 by Judge Fred

Battaglia, Jr. in Durham County District Court. Heard in the Court of Appeals 7

August 2018.

 Collins Family Law Group, by Rebecca K. Watts, for plaintiff-appellant.

 No brief filed on behalf of pro se defendant-appellees.

 CALABRIA, Judge.

 Emily Susanna Chávez (“plaintiff”) appeals from the trial court’s order

dismissing her complaint for lack of subject matter jurisdiction pursuant to N.C. Gen.

Stat. § 1A-1, Rule 12(b)(1) (2017). On appeal, plaintiff contends that the trial court

erred by concluding that she lacked standing to seek custody of the biological children

of Serena Sebring Wadlington and Joseph Fitzgerald Wadlington (collectively,

“defendants”). After careful review, we affirm the trial court’s order.

 I. Factual and Procedural Background
 CHÁVEZ V. WADLINGTON

 Opinion of the Court

 Serena Sebring Wadlington (“mother”) and Joseph Fitzgerald Wadlington

(“father”) are the biological parents of B.J.W., born 10 February 2000, and C.A.W.,

born 5 January 2003. Both B.J.W. and C.A.W. (collectively, “the children”) were

conceived and born during defendants’ marriage. Although defendants separated in

2007, they never divorced. Therefore, defendants are still married today and have

shared physical and legal custody of the children without a court order.

 Around the time defendants separated, plaintiff and mother entered into a

“long-term, committed and exclusive relationship” that lasted approximately seven

years. During this time, mother and plaintiff resided together, with the children,

when the children were not residing with father. While plaintiff and mother could

not legally marry for much of their relationship, mother did not seek a divorce from

father and did not pursue a legal marriage with plaintiff after same-sex marriage was

recognized in North Carolina. During their relationship, plaintiff assisted mother

with her child-rearing duties such as taking the children to school, accompanying

them to appointments and activities, assisting them with schoolwork, and purchasing

necessities for the children and the household.

 On 4 March 2015, plaintiff and mother separated when plaintiff left the

residence she shared with mother and the children. On 10 July 2015, plaintiff filed

an action to evict mother and the children, which was dismissed. Approximately two

weeks later, while mother was away on a work-related trip and the children were at

 -2-
 CHÁVEZ V. WADLINGTON

 Opinion of the Court

a family reunion with father, plaintiff used self-help to change the locks, removed all

of mother’s and the children’s belongings from the house, and placed their belongings

in a storage unit. Plaintiff subsequently contacted the children, then aged 12 and 15.

However, the children were unwilling to continue a relationship with plaintiff.

 On 4 November 2016, plaintiff filed a complaint against defendants in Durham

County District Court seeking shared physical and legal custody of the children.

Plaintiff alleged, inter alia, that she “was centrally involved in the care, upbringing

and development” of the children during her relationship with mother, and that

mother “intended to and did create a permanent parental relationship” between

them. According to plaintiff, mother “acted inconsistently with her protected status

as a parent by relinquishing her right to exclusive care and control of the minor

children in granting parental status to [p]laintiff.” Plaintiff further alleged that it

would be in the children’s best interests for plaintiff “to be involved in their lives on

a regular basis.”

 On 1 August 2017, defendants filed a motion to dismiss plaintiff’s complaint

pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). Defendants asserted that the trial

court lacked subject matter jurisdiction because plaintiff lacked standing to seek

custody of the children and failed to allege that defendants were unfit or had acted

inconsistently with their constitutionally protected status as parents.

 -3-
 CHÁVEZ V. WADLINGTON

 Opinion of the Court

 Following a hearing, on 28 August 2017, the trial court entered an order

granting defendants’ motion to dismiss. The court concluded, in pertinent part, that:

 3. Plaintiff is not a parent and is not a defacto [sic] parent.

 4. Defendants, as the biological and legal parents of the
 minor children, have a constitutionally protected right [to]
 the exclusive care, custody and control of their children
 under the Fourteenth Amendment to the Constitution of
 the United States.

 5. Plaintiff has no standing to seek custody of Defendants’
 children as an “other person” pursuant to N.C.G.S. § 50-
 13.1(a) and NC Caselaw, to wit:

 a. Plaintiff has no relationship with the minor
 children;
 b. Defendants and their children are an intact
 family, with no pending custody litigation between
 them;
 c. Neither Defendant has neglected, abused, or
 abandoned his/her children; and
 d. Neither Defendant has acted inconsistent with
 his/her constitutionally protected right as a parent.

 6. Plaintiff has failed to allege or establish by clear and
 convincing evidence that either Defendant has engaged in
 conduct inconsistent with his/her constitutionally
 protected right as a parent or otherwise forfeited his/her
 constitutionally protected status as a parent.

 Plaintiff appeals.

 II. Standing

 On appeal, plaintiff argues that the trial court erred in dismissing her

complaint for lack of standing. We disagree.

 -4-
 CHÁVEZ V. WADLINGTON

 Opinion of the Court

 A. Standard of Review

 “[O]n a motion to dismiss the facts are viewed in the light most favorable to

the nonmovant, giving them the benefit of all plausible inferences.” Ellison v. Ramos,

130 N.C. App. 389, 395, 502 S.E.2d 891, 895, appeal dismissed and disc. review

denied, 349 N.C. 356, 517 S.E.2d 891 (1998). In custody cases, “the trial court’s

findings of fact are conclusive on appeal if there is evidence to support them, even

though the evidence might sustain findings to the contrary.” Owenby v. Young, 357

N.C. 142, 147, 579 S.E.2d 264, 268 (2003). “Unchallenged findings of fact are binding

on appeal.” Peters v. Pennington, 210 N.C. App. 1, 13, 707 S.E.2d 724, 733 (2011).

Standing is a question of law which this Court reviews de novo. Perdue v. Fuqua, 195

N.C. App. 583, 585, 673 S.E.2d 145, 147 (2009) (citation and quotation marks

omitted).

 B. Discussion

 Subject matter jurisdiction is “a court’s power to hear a specific type of action,

and is conferred upon the courts by either the North Carolina Constitution or by

statute.” Yurek v. Shaffer, 198 N.C. App. 67, 75, 678 S.E.2d 738, 744 (2009) (citation

and quotation marks omitted). “Standing is a necessary prerequisite to a court’s

proper exercise of subject matter jurisdiction.” Myers v. Baldwin, 205 N.C. App. 696,

698, 698 S.E.2d 108, 109 (2010) (citation omitted). “Plaintiffs have the burden of

proving that standing exists.” Id.

 -5-
 CHÁVEZ V. WADLINGTON

 Opinion of the Court

 In custody proceedings, standing is governed by N.C. Gen. Stat. § 50-13.1(a),

which provides, in pertinent part, that “[a]ny parent, relative, or other person . . .

claiming the right to custody of a minor child may institute an action or proceeding

for the custody of such child[.]” Here, since plaintiff is neither a natural parent nor

a relative of the children, she claims a right to custody as an “other person” pursuant

to N.C. Gen. Stat. § 50-13.1(a). However, B.J.W. turned 18 years old on 10 February

2018, and is therefore no longer a “minor child” subject to custody disputes. See N.C.

Gen. Stat. § 48A-2 (“A minor is any person who has not reached the age of 18 years.”).

Accordingly, plaintiff’s appeal is moot with regards to B.J.W. and “should be

dismissed, for courts will not entertain or proceed with a cause merely to determine

abstract propositions of law.” In re Peoples, 296 N.C. 109, 147, 250 S.E.2d 890, 912

(1978), cert. denied, 442 U.S. 929, 61 L. Ed. 2d 297 (1979). Therefore, we dismiss

plaintiff’s appeal as to B.J.W. and consider plaintiff’s standing as an “other person”

only insofar as C.A.W. is concerned.

 Despite the broad language of N.C. Gen. Stat. § 50-13.1(a), “our Supreme Court

has indicated that there are limits on the ‘other persons’ who can bring” an action for

custody. Myers, 205 N.C. App. at 698, 698 S.E.2d at 110 (citation and quotation

marks omitted). The statute “was not intended to confer upon strangers the right to

bring custody or visitation actions against parents of children unrelated to such

strangers. Such a right would conflict with the constitutionally-protected paramount

 -6-
 CHÁVEZ V. WADLINGTON

 Opinion of the Court

right of parents to custody, care, and control of their children.” Petersen v. Rogers,

337 N.C. 397, 406, 445 S.E.2d 901, 906 (1994).

 “[T]he relationship between the third party and the child is the relevant

consideration for the standing determination” in custody disputes between non-

parent third parties and natural parents. Ellison, 130 N.C. App. at 394, 502 S.E.2d

at 894. “[A] relationship in the nature of a parent and child relationship, even in the

absence of a biological relationship, will suffice to support a finding of standing.” Id.

 “No appellate court in North Carolina has attempted to draw any bright lines

for how long the period of time needs to be or how many parental obligations the

person must have assumed in order to trigger standing against a parent[.]” Myers,

205 N.C. App. at 699, 698 S.E.2d at 110 (citation and quotation marks omitted).

However, the cases in which this Court has determined that a third party had

standing to seek custody against a natural parent have “involved significant

relationships over extensive periods of time.” Id.; see, e.g., Moriggia v. Castelo, __ N.C.

App. __, __, __, 805 S.E.2d 378, 379, 389 (2017) (holding that the trial court erred by

concluding that the plaintiff lacked standing to seek custody of a minor child born 11

June 2013 to the parties, “a lesbian couple who never married but [who] were in a

committed and loving relationship from January 2006 until October 2014” and

“decided during the relationship to have a child” together (internal quotation marks

omitted)); Mason v. Dwinnell, 190 N.C. App. 209, 220, 660 S.E.2d 58, 65 (2008)

 -7-
 CHÁVEZ V. WADLINGTON

 Opinion of the Court

(holding that the plaintiff had standing to pursue custody where she alleged that she

and the defendant “jointly raised the child; they entered into an agreement in which

they each acknowledged that [the plaintiff] was a de facto parent and had ‘formed a

psychological parenting relationship with the parties’ child;’ and ‘the minor child has

lived all his life enjoying the equal participation of both [the plaintiff] and [the

defendant] in his emotional and financial care and support, guidance and decision-

making’ ”); Ellison, 130 N.C. App. at 396, 502 S.E.2d at 895 (determining that the

third-party plaintiff had standing to seek custody where she alleged that she was “the

only mother the minor child has known” and that during her five-year relationship

with the defendant-father, she “was the responsible parent . . . who took the minor

child to her medical appointments, to school, attended teacher conferences, took the

minor child for diabetic treatment and counseling, . . . and bought all the child’s

necessities” (internal quotation marks omitted)).

 Furthermore, a non-parent who seeks custody against a natural parent must

also allege “some act inconsistent with the parent’s constitutionally protected status.”

Yurek, 198 N.C. App. at 75, 678 S.E.2d at 744 (citations omitted). The acts alleged

“are not required to be ‘bad acts’ that would endanger the children.” Moriggia, __

N.C. App. at __, 805 S.E.2d at 385 (citation and quotation marks omitted). But

“absent a showing . . . that the natural parents are unfit, have neglected the welfare

of the child, or have acted in a manner inconsistent with the paramount status

 -8-
 CHÁVEZ V. WADLINGTON

 Opinion of the Court

provided by the Constitution, the [non-parent] does not have standing.” Perdue, 195

N.C. App. at 586-87, 673 S.E.2d at 148.

 In the instant case, the trial court concluded that plaintiff lacked standing to

seek custody of defendants’ children. The court found, in relevant part, that:

 11. [Mother] is the biological and legal mother of the two
 minor children, who are at issue in this matter[.] . . .
 [Father] is the biological and legal father of said children,
 who were both conceived and born during the marriage of
 Defendants.

 12. Defendants separated in December 2007, when their
 youngest child . . . was five (5) years old; however, the
 Defendants have never divorced, and remain married to
 one another.

 13. Defendants have shared legal and physical custody of
 their minor children since their separation, in a peaceful
 and cooperative manner. They have agreed upon a
 custodial schedule, and have agreed on modifications to
 that schedule over the years when it was necessary. The
 Defendants have shared legal and physical custody of their
 children so well that it has never been necessary for either
 Defendant to seek a Court Order regarding the custody of
 their children.

 ....

 17. Plaintiff was never a legal step-parent to Defendants’
 children. Initially, this was partially because that
 particular legal status was not available to her in North
 Carolina. However, after same-sex marriage was
 authorized and recognized in North Carolina, [Mother] did
 not divorce [Father] . . . to marry Plaintiff. Plaintiff merely
 remained the live-in romantic partner of Mother.

 18. While residing together, Plaintiff assisted Mother with

 -9-
 CHÁVEZ V. WADLINGTON

 Opinion of the Court

her daily child-rearing duties, such as voluntarily taking
them to/from various appointments and activities,
assisting them with schoolwork, and purchasing some
necessities for the minor children. As such, Plaintiff was
involved in the children[’s] care and upbringing, and had a
positive and healthy relationship with the children.

19. Plaintiff and Mother separated on March 4, 2015, when
Plaintiff left the residence she shared with Mother and the
children.

20. On or about July 10, 2015, Plaintiff filed a lawsuit to
evict Mother and the children from the residence. Said
action was dismissed. Shortly thereafter (approximately 2
weeks later), while Mother was away on a business trip and
the children were with Father, Plaintiff used self-help to
change the locks, and removed all of Mother’s belongings
and the children’s belongings from their residence, and
placed their items in storage. Plaintiff then moved back
into the residence, once occupied by Plaintiff and Mother.
At that point, the relationship between Plaintiff and the
children ended.

 ....

24. After Plaintiff locked mother and the children out in
July of 2015, Plaintiff did not seek to resume her
relationship with the children. Since July 2015, Plaintiff
has not had a relationship with the children.

25. Since each of their respective births, the children have
always resided with Mother and/or Father. Neither
Defendant has ever abandoned their children.

 ....

27. On its face, Plaintiff’s Complaint fails to allege facts
sufficient to give Plaintiff third-party standing to bring an
action for custody.

 - 10 -
 CHÁVEZ V. WADLINGTON

 Opinion of the Court

 28. In her Complaint filed on November 4, 2016, Plaintiff
 alleged facts consistent with a conclusion that she had a
 “parent-child relationship” with Defendants’ children,
 while she and Mother resided together. Plaintiff then
 added conclusory statements (no factual allegations
 asserted) that [mother] had acted inconsistent with her
 parental rights, asserting that this Court had jurisdiction
 to decide custody of Defendants’ children on the “best
 interests” standard.

 29. Plaintiff did not and does not allege that either
 Defendant is unfit or has abandoned or neglected their
 children.

 30. Neither Defendant is unfit or has abandoned or
 neglected their children.

 31. Plaintiff did not and does not allege that Father has
 acted in a manner inconsistent with his constitutionally
 protected status as a parent.

 32. Neither Defendant has acted in a manner inconsistent
 with his/her constitutionally protected status as a parent.

 Plaintiff contends that she established standing as an “other person” pursuant

to N.C. Gen. Stat. § 50-13.1(a) because she sufficiently alleged a parent-child

relationship with the children. Plaintiff further contends that “[t]he issue of whether

[defendants] acted inconsistently with their protected status is not relevant to the

question of standing or to the issue of subject matter jurisdiction.” Plaintiff is

incorrect on both counts.

 Taken as true and viewed in the light most favorable to plaintiff, the

allegations in plaintiff’s complaint demonstrate that she had a parent-child

 - 11 -
 CHÁVEZ V. WADLINGTON

 Opinion of the Court

relationship with the children during her relationship with mother. We do not doubt

that there was genuine love and affection between plaintiff and the children during

those years; indeed, mother acknowledged as much during the hearing.

Nevertheless, “standing is measured at the time the pleadings are filed.” Quesinberry

v. Quesinberry, 196 N.C. App. 118, 123, 674 S.E.2d 775, 778 (2009). Thus, “when

standing is questioned, the proper inquiry is whether an actual controversy existed

when the party filed the relevant pleading.” Id. (citation, quotation marks, and

brackets omitted).

 According to the trial court’s unchallenged findings of fact 20 and 24, plaintiff’s

relationship with the children ended in July 2015 when she evicted them from the

residence. This fact defeats plaintiff’s standing as an “other person.” Regardless of

the parties’ prior relationship, “a third party who has no relationship with a child

does not have standing under N.C. Gen. Stat. § 50-13.1 to seek custody of a child from

a natural parent.” Ellison, 130 N.C. App. at 394, 502 S.E.2d at 894.

 The dissent, however, contends that the fact that “plaintiff’s relationship with

the children ended in July 2015 . . . does not prevent plaintiff from establishing a

parent-child relationship for the purposes of standing in a child custody case.”

According to the dissent,

 [i]ntentions after the ending of the relationship between
 the parties are not relevant because the right of the legal
 parent does not extend to erasing a relationship between
 her partner and her child which she voluntarily created

 - 12 -
 CHÁVEZ V. WADLINGTON

 Opinion of the Court

 and actively fostered simply because after the party’s
 separation she regretted having done so.

Estroff v. Chatterjee, 190 N.C. App. 61, 70-71, 660 S.E.2d 73, 79 (2008) (citation,

internal quotation marks, and alterations omitted).

 Significantly, however, standing was not at issue in Estroff. See id. at 75 n.2,

660 S.E.2d at 81 n.2 (noting that “the trial court necessarily concluded twice that [the

plaintiff] had standing, and there is no need for us to address the issue” where the

trial court, “in its 3 August 2005 order, denied [the defendant’s] motion to dismiss for

lack of standing and, in its 17 November 2006 order, concluded that it had personal

and subject matter jurisdiction” (quotation marks and original emphasis omitted)).

Furthermore, this portion of Estroff pertains not to the existence of a parent-like

relationship between the third party and the minor child, but rather to the method

by which the third party gained such authority—i.e., the issue of whether the natural

parent has acted inconsistently with his or her constitutionally protected rights. See

id. at 75, 660 S.E.2d at 81-82 (explaining that “the focus is not on what others thought

of the couple or what responsibility [the plaintiff] elected to assume, but rather

whether [the defendant] chose to cede to [the plaintiff] a sufficiently significant

amount of parental responsibility and decision-making authority to create a

permanent parent-like relationship with her child” (citation, quotation marks, and

original alterations omitted)).

 - 13 -
 CHÁVEZ V. WADLINGTON

 Opinion of the Court

 As the dissent recognizes, defendants’ constitutionally protected parental

rights and plaintiff’s standing as an “other person” pursuant to N.C. Gen. Stat. § 50-

13.1(a) are not wholly independent issues. The statute does not exist in a vacuum.

See Perdue, 195 N.C. App. at 586, 673 S.E.2d at 148 (“While this Court recognizes

that intervenor satisfies the definition of ‘other person’ because she was the primary

caregiver since birth and she had a close familial relationship with the minor child,

the grandmother is still required to allege parental unfitness.”). However, the dissent

conflates the significance of the constitutional issue as it relates to plaintiff’s standing

versus the merits of her custody claim. Although relevant to both inquiries, “standing

is a threshold issue that must be addressed, and found to exist, before the merits of

the case are judicially resolved.” Id. at 585, 673 S.E.2d at 147 (citation and quotation

marks omitted). As a non-parent third party, plaintiff lacks standing to seek custody

unless she overcomes the presumption that defendants have “the superior right to

the care, custody, and control” of the children. Id. at 586, 673 S.E.2d at 148 (citing

Petersen, 337 N.C. at 403-04, 445 S.E.2d at 905).

 Plaintiff failed to overcome this presumption. Plaintiff has never alleged that

either defendant is unfit or has abandoned or neglected the children. According to

the trial court’s finding of fact 31, plaintiff’s complaint does not allege that father

acted inconsistently with his protected status as a parent. Therefore, even assuming,

arguendo, that plaintiff alleged facts sufficient to overcome mother’s Petersen

 - 14 -
 CHÁVEZ V. WADLINGTON

 Opinion of the Court

presumption, father’s rights as a natural parent remain superior to those of a non-

parent. Id.; see also Brewer v. Brewer, 139 N.C. App. 222, 232, 533 S.E.2d 541, 549

(2000) (“[A] parent who voluntarily gave custody to the other parent and has never

been adjudged unfit does not lose [their] Petersen presumption against a non-parent

third party so long as the non-parent third party does not have court-ordered

custody.”).

 Plaintiff also argues that the trial court’s dismissal of her complaint for lack of

subject matter jurisdiction was procedurally improper, in that certain of the court’s

findings are “relevant only to a Rule 12(b)(6) analysis.” This elevates form over

substance. As plaintiff recognizes, standing is necessary to survive motions to

dismiss for lack of subject matter jurisdiction or failure to state a claim. See Moriggia

__ N.C. App. at __, 805 S.E.2d at 384 (“Standing concerns the trial court’s subject

matter jurisdiction and is therefore properly challenged by a Rule 12(b)(1) motion to

dismiss.” (citation and quotation marks omitted)); see also Street v. Smart Corp., 157

N.C. App. 303, 305, 578 S.E.2d 695, 698 (2003) (“A lack of standing may be challenged

by [a] motion to dismiss for failure to state a claim upon which relief may be granted.”

(citation and quotation marks omitted)). However, regardless of the procedural

posture in which the issue arises, “[i]f a party does not have standing to bring a claim,

a court has no subject matter jurisdiction to hear the claim.” Perdue, 195 N.C. App.

 - 15 -
 CHÁVEZ V. WADLINGTON

 Opinion of the Court

at 587, 673 S.E.2d at 148 (citation and quotation marks omitted). “Without

jurisdiction the trial court must dismiss all claims brought by the [plaintiff].” Id.

 III. Conclusion

 Plaintiff has not had a relationship with the children since July 2015.

Furthermore, according to the trial court, plaintiff failed to allege or establish clear

and convincing evidence that either defendant was unfit or engaged in conduct

inconsistent with his or her constitutionally protected status as a parent. Therefore,

the trial court did not err by concluding that plaintiff lacks standing to seek custody

of the children, and we affirm the order dismissing her complaint for lack of subject

matter jurisdiction. Since the issue of standing is dispositive, we need not address

plaintiff’s remaining arguments.

 AFFIRMED.

 Judge MURPHY concurs.

 Judge ARROWOOD dissents in a separate opinion.

 - 16 -
No. COA18-93 – Chavez v. Wadlington

 ARROWOOD, Judge, dissenting.

 The majority holds that the trial court did not err by dismissing Emily Susanna

Chavez (“plaintiff”)’s complaint for shared custody of Serena Sebring Wadlington and

Joseph Fitzgerald Wadlington (collectively, “defendants”)’s biological children

pursuant to Rule 12(b)(1) of the North Carolina Rules of Civil Procedure because it

concluded plaintiff lacked standing to seek custody of C.A.W. I respectfully dissent.

 I believe plaintiff alleged sufficient facts to have standing as to C.A.W.

However, I offer no opinion as to whether she may ultimately prevail. “Standing

concerns the trial court’s subject matter jurisdiction and is therefore properly

challenged by a Rule 12(b)(1) motion to dismiss. Our review of an order granting a

Rule 12(b)(1) motion to dismiss is de novo.” Moriggia v. Castelo, __ N.C. App. __, __,

805 S.E.2d 378, 384 (2017) (citation and internal quotation marks omitted). In

determining standing, our Court “may consider matters outside the pleadings.”

Harris v. Matthews, 361 N.C. 265, 271, 643 S.E.2d 566, 570 (2007) (citations omitted).

 Standing for an individual to bring an action for child custody is governed by

N.C. Gen. Stat. § 50-13.1(a), which provides that “[a]ny parent, relative, or other

person, agency, organization or institution claiming the right to custody of a minor

child may institute an action or proceeding for the custody of such child, as

hereinafter provided.” N.C. Gen. Stat. § 50-13.1(a) (2017). However, “there are limits

on the ‘other persons’ who can bring such an action. A conclusion otherwise would

conflict with the constitutionally-protected paramount right of parents to custody,
 CHAVEZ V. WADLINGTON

 ARROWOOD, J., dissenting

care, and control of their children.” Mason v. Dwinnell, 190 N.C. App. 209, 219, 660

S.E.2d 58, 65 (2008) (internal quotation marks and citation omitted).

 In Ellison v. Ramos, 130 N.C. App. 389, 502 S.E.2d 891 (1998), our Court held

“that a relationship in the nature of a parent and child relationship, even in the

absence of a biological relationship, will suffice to support a finding of standing.” Id.

at 394, 502 S.E.2d at 894. Subsequently, our General Assembly mandated in N.C.

Gen. Stat. § 50-13.2(a) “that disputes over custody be resolved solely by application

of the ‘best interest of the child’ standard.” Estroff v. Chatterjee, 190 N.C. App. 61,

63, 660 S.E.2d 73, 75 (2008). However, before the best interest of the child standard

can be used as between a legal parent and a third party, “our federal and state

constitutions, as construed by the United States and North Carolina Supreme

Courts” require that “the evidence establishes that the legal parent acted in a manner

inconsistent with his or her constitutionally-protected status as a parent.” Id. at 63-

64, 660 S.E.2d at 75 (citing Price v. Howard, 346 N.C. 68, 484 S.E.2d 528 (1997)).

Thus, a party seeking custody must now “allege facts demonstrating a sufficient

relationship with the child and then must demonstrate that the parent has acted in

a manner inconsistent with his or her protected status as a parent.” Moriggia, __

N.C. App. at __, 805 S.E.2d at 385. Here, the majority holds that plaintiff failed to

both (1) sufficiently allege a parent-child relationship with the children, and (2) allege

 2
 CHAVEZ V. WADLINGTON

 ARROWOOD, J., dissenting

facts sufficient to overcome the natural parents’ constitutionally protected status. I

disagree.

 I. Parent-Child Relationship

 The majority first holds that plaintiff’s allegations, taken as true and viewed

in the light most favorable to the plaintiff, demonstrate that she had a parent-child

relationship with the children while in a relationship with defendant mother, but that

plaintiff’s relationship with the children ended in July 2015 when she evicted them

and their mother from the residence, and, thus, plaintiff did not sufficiently allege a

parent-child relationship. Although our Court is bound by unchallenged findings of

fact 20 and 24, that the plaintiff’s relationship with the children ended in July 2015,

this does not prevent plaintiff from establishing a parent-child relationship for the

purposes of standing in a child custody case. We must also consider the parties’

actions during the relationship of plaintiff and defendant mother, as:

 the actions and intentions during the relationship of the
 parties, during the planning of the family, and before the
 estrangement carry more weight than those at the end of
 the relationship since . . . “[i]ntentions after the ending of
 the relationship between the parties are not relevant
 because the right of the legal parent does not extend to
 erasing a relationship between her partner and her child
 which she voluntarily created and actively fostered simply
 because after the party’s separation she regretted having
 done so.”

Moriggia, __ N.C. App. at __, 805 S.E.2d at 387 (quoting Estroff, 190 N.C. App. at 70-

71, 660 S.E.2d at 79 (citation and internal quotation marks omitted)). Although

 3
 CHAVEZ V. WADLINGTON

 ARROWOOD, J., dissenting

Moriggia considers whether the natural parent acted inconsistently with his or her

paternal rights so as to establish standing, I would hold that the fact that a legal

parent does not have the right to erase a parent-child relationship between her

partner and her child which she created and fostered during the relationship is also

relevant here.

 Here, plaintiff alleges, and the trial court found as fact, that she was in a long-

term, committed, and exclusive relationship with defendant mother for

approximately seven years, making public vows of commitment in May 2012.

Plaintiff alleged she was “involved in the care, upbringing and development of the

minor children throughout her relationship with” defendant mother, and that it was

defendant mother’s intent to create a permanent relationship between plaintiff and

the children. She also alleged that she “and [d]efendant [m]other publically held

themselves out as the . . . children’s parents[,]” and defendant mother delegated

parental responsibilities to plaintiff, including: taking the children to appointments

and activities, assisting with schoolwork, providing emotional stability, having

decision-making authority regarding the children, and purchasing necessities for the

children. I would hold that these allegations, taken as true and in the light most

favorable to plaintiff, are sufficient to establish plaintiff had a parent-child

relationship with defendants’ children.

 4
 CHAVEZ V. WADLINGTON

 ARROWOOD, J., dissenting

 Nonetheless, the majority holds that these allegations are irrelevant to our

inquiry because “standing is measured at the time the pleadings are filed,” see

Quesinberry v. Quesinberry, 196 N.C. App. 118, 123, 674 S.E.2d 775, 778 (2009), and

the trial court found plaintiff’s relationship with the children ended in July 2015 once

they were evicted from plaintiff’s house. However, considering whether plaintiff had

a parent-child relationship with defendants’ children before plaintiff’s separation

from defendant is not contrary to the principle that “standing is measured at the time

the pleadings are filed[,]” id., as “the right of the legal parent does not extend to

erasing a relationship between her partner and her child which she voluntarily

created and actively fostered simply because after the party’s separation she

regretted having done so.” Moriggia, __ N.C. App. at __, 805 S.E.2d at 387 (citation,

internal quotation marks, and emphasis omitted).

 Accordingly, I would hold that defendant mother cannot erase the parent-child

relationship by removing the children from plaintiff’s life after her separation from

plaintiff. Therefore, our Court should also consider the parent-child relationship that

existed before the termination of plaintiff and defendant mother’s relationship led to

the eviction of defendant and the children from plaintiff’s house and plaintiff’s

inability to maintain her relationship with the children. As a result, I would hold

that plaintiff’s allegations, taken as true and in the light most favorable to plaintiff,

 5
 CHAVEZ V. WADLINGTON

 ARROWOOD, J., dissenting

are sufficient to establish plaintiff had a parent-child relationship with defendants’

children.

 II. Actions Inconsistent with Parental Rights

 Although plaintiff incorrectly alleges on appeal that she does not need to allege

that defendants acted inconsistently with their parental rights to establish standing,

she also argues in the alternative that her allegations demonstrate that defendants

acted inconsistently with their protected status as a parent by relinquishing their

right to exclusive care and control of the children by granting plaintiff parental rights

when defendant mother voluntarily and intentionally created a family unit and “a

parent-like relationship between [p]laintiff and the” children.

 In Petersen v. Rogers, 337 N.C. 397, 445 S.E.2d 901 (1994), our Supreme Court

held “that absent a finding that parents (i) are unfit or (ii) have neglected the welfare

of their children, the constitutionally-protected paramount right of parents to

custody, care, and control of their children must prevail” in a dispute with a non-

parent. Id. at 403-404, 445 S.E.2d at 905. However, “[i]n Price, the Supreme Court

expanded on what constitutes unfitness or neglect by holding that conduct

inconsistent with a parent’s constitutionally protected status would lead to the

application of the best interests of the child standard.” Brewer v. Brewer, 139 N.C.

App. 222, 229, 533 S.E.2d 541, 547 (2000) (citing Price, 346 N.C. at 79, 484 S.E.2d at

534). Our Court has held that a parent acts inconsistently with his or her protected

 6
 CHAVEZ V. WADLINGTON

 ARROWOOD, J., dissenting

status as a parent by relinquishing the right to exclusive care and control of a child

by granting parental status to a third party. Estroff, 190 N.C. App. at 70, 660 S.E.2d

at 78 (citation omitted). Thus, when a legal parent invites a third party into a child’s

life and cedes to the third party a significant amount of parental responsibility, the

parent cannot later “assert those rights in order to unilaterally alter the relationship

between her child and the person whom she transformed into a parent.” Id. (citation

omitted).

 Here, plaintiff’s allegations and the trial court’s uncontested findings of fact

tend to show that plaintiff and defendant mother were in a committed relationship

and raised defendant mother’s children together for five years. They lived as a family

unit until the relationship ended. When they ultimately separated, defendant

mother’s intentions changed, but she had already created a family unit that included

plaintiff. Thus, I would hold plaintiff alleged facts sufficient to overcome the mother’s

Petersen presumption.

 However, the majority holds that even assuming arguendo, plaintiff alleged

facts sufficient to overcome defendant mother’s Petersen presumption, the trial court

found that plaintiff’s complaint does not allege the father acted inconsistently with

his protected status; thus, the father’s rights remain superior to those of a non-parent.

The majority relies on Brewer to support this holding.

 7
 CHAVEZ V. WADLINGTON

 ARROWOOD, J., dissenting

 In Brewer, the biological father of two children entered into a consent order

with the children’s biological mother that granted him custody. Brewer, 139 N.C.

App. at 224, 533 S.E.2d at 544. Thereafter, the father unilaterally allowed the

children to live with their paternal aunt and uncle. Id. The biological mother was

unaware of this change. Id. at 231, 533 S.E.2d at 548. Subsequently, the paternal

aunt and uncle filed an action to obtain permanent legal custody of the children. Id.

at 224, 533 S.E.2d at 544. The trial court granted the paternal aunt and uncle

temporary custody in an ex parte order. Id. The biological mother then moved to

vacate this order, asking the court to grant her custody of the children. Id. The court

awarded the biological mother custody of the children. Id. The paternal aunt and

uncle appealed. Id.

 In reviewing the trial court’s decision, the Court was careful to distinguish the

case from cases where “a parent loses her Petersen presumption if she loses custody

to a non-party in a court proceeding or consent order.” Id. at 230, 533 S.E.2d at 548.

Moreover, the Court specified the case did “not present a question where the moving

parent either voluntarily or involuntarily lost custody to a non-parent third party.

[The biological mother] never surrendered custody of her children to the non-parent

plaintiffs . . . [she], through no fault of her own was unaware where the children

were.” Id. at 231, 533 S.E.2d at 548.

 8
 CHAVEZ V. WADLINGTON

 ARROWOOD, J., dissenting

 In light of the circumstances before it, the Court held: a natural parent should

maintain her “Petersen presumption against a non-parent where the parent had

voluntarily relinquished custody to the other parent, had never voluntarily or

involuntarily relinquished custody to a non-parent, had never been adjudged unfit,

and had never acted in a manner inconsistent with her protected parental status.”

Id. at 232, 533 S.E.2d at 548. The Court then specifically emphasized this holding “is

limited strictly to the facts presented by this case.” Id. at 232, 533 S.E.2d at 549

(emphasis added).

 Our Court’s caution in limiting Brewer is well-justified, given that “cases in

this area present a vast number of unforeseen fact patterns.” Id. (citing Ellison, 130

N.C. App. at 395, 502 S.E.2d at 894-95). Thus, I believe that relying on Brewer in a

case where the defendant father saw the children regularly and “never abandoned”

the children during the course of defendant mother’s relationship with plaintiff

impermissibly expands Brewer, a case where the biological mother was unaware the

children were living with non-parents through no fault of her own.

 Admittedly, the complaint in this case fails to specifically allege that defendant

father abrogated his constitutionally protected status. However, our Court may look

outside the pleadings in reviewing a Rule 12(b)(1) ruling. Harris, 361 N.C. at 271,

643 S.E.2d at 570; see Cunningham v. Selman, 201 N.C. App. 270, 280, 689 S.E.2d

517, 524 (2009) (“Unlike a Rule 12(b)(6) dismissal, the court need not confine its

 9
 CHAVEZ V. WADLINGTON

 ARROWOOD, J., dissenting

evaluation of a Rule 12(b)(1) motion to the face of the pleadings, but may review or

accept any evidence, such as affidavits, or it may hold an evidentiary hearing.”

(citation, quotation marks, and alterations omitted)).

 Here, the trial court held an evidentiary hearing, during which plaintiff

repeatedly contended that both parents abrogated their constitutionally protected

status by granting her the status of a parent. The trial court called defendant mother

to the stand on the issue of standing. Defendant mother testified that she and

plaintiff co-parented the children for five years, and that defendant father “had a good

relationship with the children” at all times. She stated he “is the other primary

parent to them” and saw the children regularly while she was in a relationship with

plaintiff. Thus, the record makes it evident that defendant father was in a position

to know that defendant mother held plaintiff out as a parent, and also intentionally

created a parent-child relationship between plaintiff and the children.

 This evidence and plaintiff’s allegations at the hearing undermine a key

finding of fact in the trial court’s order that “[p]laintiff did not and does not allege

that Father has acted in a manner inconsistent with his constitutionally protected

status as a parent.” Moreover, I would hold that the pleadings and defendant

mother’s testimony was sufficient to show by clear and convincing evidence that

defendant father acted in a manner inconsistent with his constitutionally protected

status because, unlike Brewer, he was in circumstances where it was apparent

 10
 CHAVEZ V. WADLINGTON

 ARROWOOD, J., dissenting

defendant mother created a parent-child relationship with plaintiff and his children.

Despite this change, defendant father never took issue with the custody arrangement,

sharing custody “in a peaceful and cooperative manner” with defendant mother since

their separation.

 Based on the circumstances before the Court, I would hold plaintiff had

standing to seek custody of C.A.W. Accordingly, I would reverse the trial court’s order

dismissing for lack of subject matter jurisdiction.

 11